**FLAG FABLES, INC., Plaintiff,**

v.

**JEAN ANN'S COUNTRY FLAGS AND CRAFTS, INC., Jean Ann Fede and Michael Fede, Defendants.**

**Civ. A. No. 89–30109–F.**

United States District Court, D. Massachusetts.

June 23, 1989.

Opinion on Motion for Bond Dec. 12, 1989.

Opinion on Motions to Vacate and for Summary Judgment Feb. 16, 1990.

Donald S. Holland, Malcolm J. Chisholm, Jr., Longmeadow, Mass., for plaintiff.

William S. Strong, Kotin, Crabtree and Strong, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

## I. INTRODUCTION

This is an action for copyright infringement, brought under federal law. The plaintiff, Flag Fables, Inc. ("Flag Fables"), alleges that the defendants, Jean Ann's Country Flags and Crafts, Inc. ("Country Flags"), and Jean Ann and Michael Fede ("the Fedes"), violated the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

This matter is presently before the Court upon plaintiff's motion for a preliminary injunction. Following a one-day hearing held on June 18, 1989, and for the reasons set forth below as required by Fed.R.Civ.P. 65(d), the Court will allow the plaintiff's motion.

## II. RELEVANT FACTS

### A. Flag Fables

The plaintiff, Flag Fables, is a Massachusetts corporation based in Longmeadow, engaged in the business of designing and selling decorative banners. The business was started by Pam Stewart ("Stewart") in the fall of 1984, and incorporated some time in the following spring. The business has grown rapidly; evidence was received by the Court that Flag Fables currently grosses over $100,000 per year. Flag Fables' products range in price from $42 to $65, depending on the complexity of the design on the banner.

Stewart testified that she originated most if not all of Flag Fables' designs in the early years of the business. Most of the designs at that time, however, were not marked with the copyright symbol, a "c" enclosed in a circle. Stewart's first brochure, issued in 1985, also lacked a copyright mark, but all subsequent brochures, beginning in late 1985, were so marked. At some point, (the exact date is unclear), Stewart also began sewing her name, the year and the copyright mark on her banners.

On August 22, 1988, Stewart registered three of her designs with the United States Copyright Office. The designs are entitled: "Sailboat" (VAu 137–693), "Pineapple" (VAu 137–694), and "Standing Welcome Goose" (VAu 137–689). In the fall of 1988, Stewart sold the company to her business manager, Wendy Diamond ("Diamond") in

part, she said, because of the controversy with the Fedes.

Three more designs were registered by Diamond on January 3, 1989: "Shaker House" (VAu 146–284), "Welcome Spring" (VAu 145–945); and two designs on February 24, 1989: "Welcome Bear" (VAu 148–199), and "Mallard" (VAu 148–196). Since certain of Flag Fables' designs were registered in Stewart's name, Stewart transferred all rights, title and interest in her designs to Flag Fables on April 17, 1989. The transfer was registered with the U.S. Copyright Office on April 20, 1989.

Of the registered designs, the plaintiff claims the following have been infringed upon: "Sailboat" (also known as "Sailing, Sailing"), "Standing Welcome Goose," "Shaker House," "Shamrocks," "Welcome Bear," and "Mallard." In addition, the plaintiff sought an injunction with respect to two designs on which registration is pending, entitled "Watering Can" and "Scottie." Plaintiff introduced a side-by-side display with examples of both the Flag Fables and the Country Flags designs. The Court had ample opportunity during the five-hour hearing to compare the respective designs.

### B. Jean Ann's Country Flags and Crafts

Jean Ann Fede ("Fede") testified that she began making and selling decorative banners in February or March of 1986. She testified that she did not copy the plaintiff's designs, but instead derived the pattern for her banners from a variety of other sources. She stated that she has been selling her contested designs since she began her business. When Fede was questioned by Don Holland, plaintiff's counsel, she said that the similarity between her banners and the plaintiff's was "mere happenstance."

The testimony of Fede, Stewart and others revealed that the defendant Fede sells her flags at the same craft fairs as the plaintiff. However, all Country Flags are priced at $40, below the prices charged by Flag Fables.

Examination of the exhibits during the hearing reveals that Fede has begun placing copyright symbols on her banners, but has not applied for registration of her designs at this time.

### C. Relationship Between the Parties

Stewart testified that she first became aware of the defendants' banners in the fall of 1986, when she saw Fede's banners displayed in a crafts store called Blue Bird Acres in Springfield, Massachusetts. After Stewart saw Fede and her banners at two craft fairs in the spring of 1987, her husband, Bob Stewart, wrote the Fedes a letter requesting that they stop selling flags which infringed on the Flag Fables product line. The Stewarts received no reply to this letter.

Just over a year later, on July 28, 1988, Attorney Holland wrote a "cease and desist" letter to the Fedes, giving notice of the copyrighted status of the Flag Fables designs and warning of possible penalties for continued infringement. Attorney Holland received a reply from Attorney Leonard Michelman, the defendants' attorney, on August 9, 1988. In his reply, Attorney Michelman stated that since objects in nature cannot be copyrighted, Stewart had no right to protection.

Flag Fables' new owner, Wendy Diamond ("Diamond"), also wrote the Fedes on January 31, 1989, stating that in light of the Fedes' persistent sale of infringing flags, she had no choice but to initiate legal proceedings. On February 10, 1989, Michael Fede replied by reiterating the earlier contention that Stewart or Flag Fables had no right to protection, and requesting that all future correspondence be directed to Attorney Michelman. Further efforts at communication were unavailing in resolving this matter.

## III. DISCUSSION

### A. Standard for Granting a Preliminary Injunction

The standard for granting a preliminary injunction in the First Circuit is well established.

In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981), quoting *Women's Community Health Ctr., Inc. v. Cohen*, 477 F.Supp. 542, 544 (D.Me.1979). The Court will consider each of these elements, but in a slightly altered order.

### B. Flag Fables Has Demonstrated a Likelihood of Success on the Merits

In order for Flag Fables to demonstrate a likelihood of success on the merits, it must show strong support for two elements: (1) that it was the owner of valid copyrights, and (2) that there was copying of the protected works by the defendants. *Concrete Machinery Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 605 (1st Cir. 1988).

#### 1. Validity of Flag Fables' Copyrights

Defendants argue that the plaintiff's copyrights may have become invalid under 17 U.S.C. § 405, which states in relevant part:

(a) **Effect of omission on copyright.** With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, the omission of the copyright notice described in sections 401 through 403 [17 U.S.C. §§ 401–403] from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered....

Defendants state that since each of Stewart's original designs was "published without notice" of copyright, the plaintiff bears the burden of showing that the omission has been "cured." Curing is accomplished by registering the work within five years of publication without notice, which under these circumstances occurred when Stewart sold her first banner containing each design.

■ The testimony at the hearing and in the record tends to show that each design at issue was first published without notice in late 1984 or early 1985. With the exception of two of those designs, on which registration is pending, all of the relevant works were registered by April of 1989. Clearly, the plaintiff has met the statutory requirement. The Court also received testimony which suggested that the plaintiff has been marking its banners as copyrighted for at least three years. While that suggests that Stewart sold her flags for as much as two years without copyright notice, the Court does not feel that the evidence supports a finding that she intentionally published without notice and that, therefore, she is somehow estopped from asserting her rights due to a form of laches. The Court must take into consideration that it is not uncommon for inexperienced new business owners to be unaware of their legal rights. Moreover, the Court finds that Stewart and Diamond have acted promptly as they have become aware of the steps necessary to protect their interests.

■ Lastly, the Court does not find legally significant certain omissions in the plaintiff's registrations which are relied on by the defendants, including date of first publication and a statement as to each work's derivative nature. First, the Court

received testimony from the current owner of Flag Fables, Diamond, that the omissions, caused by her inexperience, were in the process of being rectified. Second, given the nature and extent of the alleged infringement, the Court would be elevating form over substance if it allowed the defendants to avoid liability based on such meager grounds.

## 2. Copying

As the defendants concede, because direct proof of "actual copying" is almost impossible to prove, courts allow a plaintiff to establish that copying took place by demonstrating (1) access to the copyrighted works and (2) substantial similarity between the offending and copyrighted articles. *Concrete Machinery*, 843 F.2d at 606.

### a. Access

■ Although the defendants' brief states in passing that Fede had no access to Stewart's work, that argument was not pursued at hearing. The Court does not find the argument credible in any event, given the rapid and widespread popularity accompanying the start of Stewart's business, including at least one locally published newspaper article. Testimony at the hearing by Stewart showed that she began displaying her flag at local craft shows at least a year and a half before Fede began producing her own versions. Under such circumstances, it would be disingenuous for the defendants to deny access.

### b. Substantial Similarity

■ Substantial similarity is a much more elusive concept to define. In the realm of copyright infringement, "substantial similarity" applies not to the *idea* at issue, but to the artist's particular *expression* of that idea. *Concrete Machinery*, 843 F.2d at 606. Thus, for instance, an artist could not copyright the idea of a "table," but could instead copyright his particular vision of what a table should look like.

### i. The "Near Identity" Test

■ As the First Circuit has pointed out, when there is but one way in which to express an idea, then "idea" and "expression" are united, and "copyright is no bar to copying that expression." *Id.* In some cases, however, the idea and its expression may not be identical, but there may only be a limited number of variations possible. In such circumstances, the burden is on the plaintiff to show "near identity" between the creative elements of the competing works in order to demonstrate infringement. *Id.* at 606–07. The rationale for the "near identity" test is that as expression and idea draw closer and closer, the original contributions which an artist can make are likewise limited. Under such circumstances, there must be "near identity" between the creative choices made by the two artists, i.e., a "near identity" in the aspects of the work which are not imposed by the idea itself. *Id.* at 607.

*Concrete Machinery* offers one good example of this distinction. The First Circuit concluded that the "idea" at issue could be described as a "realistic-looking concrete deer." The Court ruled that Concrete Machinery could not stop others from producing their own "realistic-looking concrete deer." However, the company could try to stop others from copying their rendition. The Appeals Court noted a problem of proof: a real deer provided most of the salient features, and any other artist could similarly duplicate them on another deer. Accordingly, Concrete Machinery was limited to claiming "substantial similarity" with those design elements over which it had creative control, including "such aspects as pose, posture, and facial expression." *Id.* at 607.

A second example of this type may be found in *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498 (2d Cir.1982), a case upon which the defendants place heavy reliance. The Second Circuit was asked to determine whether or not two snowmen were "substantially similar." The Court of Appeals held that they were not, ruling that any similarity resulted "solely from the fact that both are snowmen." *Id.* at

500. Particular creative elements of the snowmen, examined in detail by the Second Circuit, revealed considerable differences. For example, the size of various features were different, and were made of different materials. In addition, the construction of the snowmen was also different. *Id.* at 500–01.

### ii. Dissection and Ordinary Observer Test

■ Of course, as the number of potential expressions of an idea grow, a work expressing that idea moves farther from the requirement of "near identity" and is accorded broader copyright protection. *Concrete Machinery*, 843 F.2d at 607. At the extreme end of this idea/expression spectrum, for example, such broader protection would be accorded an artist's or a craftsman's rendering of a table, since there are a potentially infinite number of ways in which the idea of a table may be expressed.

When the artist's expression, not the idea, is the predominate feature of a work, the First Circuit has adopted a two-part test to determine whether or not "substantial similarity" exists. First, a court must "dissect" the allegedly infringing work, "to assess whether there are sufficient articulable similarities to justify a finding that the defendant has copied from the protected work." *Id.* at 608.

Second, if "copying" is established, a court "must determine whether the copying is sufficiently substantial to constitute 'unlawful appropriation.' " *Id.* This second step is in fact an application of the "ordinary observer" test, the traditional standard of copyright infringement. *Id.* Under the "ordinary observer" test, a court attempts to determine whether or not an ordinary observer would recognize that the alleged copy was appropriated from the protected work. *Id.* at 607 and cases cited.

■ The defendants argue that the works in question fall at the "near identify" end of the creative spectrum, that "the idea dominates the expression" in this instance, and that the plaintiff must show "near identity." Defendants' Memorandum in Opposition of Plaintiff's Prayer for Preliminary Injunction at 10. This Court strongly disagrees, holding instead that the banners in this case fall nearer the multiple expression end of the idea/expression spectrum and that, accordingly, the First Circuit's two-part "substantial similarity" test should be applied. *See Concrete Machinery*, 843 F.2d at 607. Despite defendants' protestations to the contrary, the ideas involved here and Stewart's expression of those ideas are not so inextricably linked that the "nearly identical" test is appropriate. To illustrate this point, one "idea" used by Stewart may be described as "white shamrock on a Kelly green banner" (assuming *arguendo* that the choice of colors is governed and limited by the association of those symbols with the Irish). Nonetheless, despite a fairly specific characterization of this idea, the number of alternative expressions possible is relatively high, including the size and shape (within limits) of the shamrock(s), the use of a decorative border, the placement of the shamrock(s) on the banner, and so forth. The same analysis also applies to Stewart's other works at issue, although to varying degrees.

### c. Item-by-item Comparison

■ The Court notes at the beginning its wholehearted agreement with the sentiments espoused in *Concrete Machinery*, that "trivial or minor variations between the accused work and the copyrighted work will not avoid a finding of infringement." *Concrete Machinery*, 843 F.2d at 609. Throughout the course of the hearing, the defendants' attorney made much of superficial differences between Fede's rendition of a design and the plaintiff's. However, the Court, through its own observation and through the assistance of expert testimony, is convinced that the differences pointed to by defense counsel were at best *de minimis*. As the First Circuit noted, "the existence of only minor differences may itself suggest copying, indicating that the infringer attempted to avoid liability by contributing only trivial variations." *Id.* at 608 and cases cited. The Court notes that it received testimony, albeit reluctantly,

from Debbie Rickless, a former business associate of the Fedes, to the effect that a conscious effort was made by the Fedes to make just enough changes to prevent legal action. While the Court makes no finding as to the truth of those charges at this time, they are sufficiently serious to merit further investigation at a later hearing.

■ Applying, then, the *Concrete Machinery* two-part "substantial similarity" analysis, the Court will first list the idea, the "articulable similarities" in expression and then apply the "ordinary observer" test for each of the contested banners.

### i. "Watering Can"

(Plaintiff's Exhibits 22 & 22a)

The idea at issue is a watering can with flowers on a banner. The Court finds the following articulable similarities with respect to the expression of this idea: background color, color of the various design elements, shape of the watering can, number and shape of flowers, and general arrangement of the design on the banner.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### ii. "Standing Welcome Goose"

(Plaintiff's Exhibits 23 & 23a)

The idea at issue is a goose on a banner with the word "welcome." The Court finds the following articulable similarities with respect to the expression of this design: background color, general shape of the goose, shape and position of the goose's beak and feet, the use of plaid for the bow, the placement of a heart at the rear of the goose, and the curving of the word "welcome" on the banner.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### iii. "Sailboat"

(Plaintiff's Exhibits 24 & 24a)

The idea at issue is a small sailboat on a banner. The Court finds the following articulable similarities with respect to the expression of this design: background col-

or, color of the boat's hull, and general arrangement of the design on the banner.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### iv. "Shaker House"

(Plaintiff's Exhibits 25 & 25a)

The idea at issue is a Shaker house on a banner with the word "welcome." The Court finds the following articulable similarities with respect to the expression of this design: the background color, the color of the house and accent hearts, the placement of the various details on the house, the shape and size of the accent heart(s), and the curving of the word "welcome" on the banner.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### v. "Shamrocks"

(Plaintiff's Exhibits 26 & 26a)

The idea at issue is a white shamrock on a Kelly green banner. The Court finds the following articulable similarities with respect to the expression of this design: the background color (the colors could have been reversed), the color of the shamrocks, the shape and size of the various shamrocks, and the general arrangement of the design on the banner.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### vi. "Welcome Bear"

(Plaintiff's Exhibits 27 & 27a)

The idea at issue is a teddy bear with the word "welcome." The Court finds the following articulable similarities with respect to the expression of this idea: shape and location of the bear and caption, shape and location of the bow, expression and features of the bear, and bear's sitting position.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### vii. "Mallard"

(Plaintiff's Exhibits 28 & 28a)

The idea at issue is a mallard on a banner. The Court finds the following articulable similarities with respect to the expression of this idea: background color, shape and size of the mallard and accompanying reeds, and the placement of the mallard and reeds on the banner.

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

### viii. "Scottie"

(Plaintiff's Exhibits 29 & 29a)

The idea at issue is a Scottish terrier on a banner. The Court finds the following articulable similarities with respect to the expression of this idea: background color, shape and size of the dog, shape and size of the bow, the placement of the dog on the banner, and the curved use of the word "welcome."

The Court concludes that an ordinary observer would find substantial similarity between the two designs.

As the above analysis illustrates, the plaintiff has demonstrated a likelihood of success on the merits.

### C. *Flag Fables Will Suffer Irreparable Harm if the Injunction is Not Granted*

■ Once a likelihood of success on the merits of the copyright claim has been demonstrated, a presumption of irreparable harm usually arises. *Concrete Machinery*, 843 F.2d at 611, citing *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1229 (8th Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). Accordingly, the First Circuit has stated that there is "no need actually to prove irreparable harm when seeking an injunction against copyright infringement." *Concrete Machinery*, 843 F.2d at 612.

■ In this case, however, the Court has received substantial evidence of irreparable harm. For instance, the plaintiff called as a witness Lucy Luker ("Luker"), a former Longmeadow crafts store owner, who testified that she would not sell defendants' banners because they were visibly inferior to the plaintiff's banners. In particular, Luker stated, the back side of defendants' banners have a much less "finished" appearance, resulting from uneven stitching and loose threads. The potential damage to the plaintiff's reputation for excellence is just the kind of irreparable harm which a motion for preliminary injunction is intended to address.

Another important factor is the fact that the defendants sell their banners at a substantial discount off the plaintiff's price. There can be little doubt that the defendants are seriously undercutting the plaintiff's local trade. The Court received testimony from Diamond that Flag Fables' sales at this year's Long Meadowe Days were down fifty percent from the year before, despite a continued rise in the company's total sales. Furthermore, Diamond testified, Flag Fables' payment of Massachusetts sales tax is down twenty-five percent from a similar point in time last year.

Normally, this Court would tend not to cite such monetary and easily liquidated damage claims in support of granting a motion for a preliminary injunction. However, the Court was disturbed by the repeated testimony regarding the dubious record-keeping employed by the defendants. Repeated testimony was given by observers and customers of the Fedes to the effect that receipts were irregularly given and that state sales tax was irregularly assessed. Testimony was also received about consumer questions regarding the pricing of the plaintiff's work, in light of the defendants' lower charge. Under such circumstances, the Court is doubtful if an accurate accounting of the plaintiff's monetary loss due to this infringement could ever be made.

Lastly, the Court notes that public demand for a particular type of craft or style of handiwork may often be fleeting. *Concrete Machinery*, 843 F.2d at 611 and cases cited; *see, e.g., Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir.1977) (fabric design). The continued success of a particular artist is also often

closely tied to the reputation he or she earns on each work produced. When someone infringes on an artist's work, the value that work has in the marketplace may be entirely lost by the time litigation concludes. Not only may it be difficult to calculate the harm done to a particular work, it may be impossible to judge the effect the infringement has on the value of an artist's subsequent works. *See Concrete Machinery*, 843 F.2d at 611.

For all the reasons stated above, the Court finds that the plaintiff has suffered and will continue to suffer irreparable harm if a preliminary injunction is not issued.

### D. The Harm to Flag Fables Outweighs the Harm to Country Flags

██ In their brief opposing the prayer for a preliminary injunction, the defendants argue that they will be "seriously damaged and [their] business could be destroyed" if the preliminary injunction is granted. Defendants' Memorandum at 16. The plaintiff argues that the defendants will not suffer any unreasonable harm if the motion is granted. Memorandum Supporting Plaintiff's Prayer for a Preliminary Injunction at 16–17.

The First Circuit has written that "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Concrete Machinery*, 843 F.2d at 612, quoting *Helene Curtis Industries v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). This rule applies, the First Circuit held, "even to a business which is exclusively based on an infringing activity and which would be virtually destroyed by a preliminary injunction." *Concrete Machinery*, 843 F.2d at 612.

Accordingly, this Court is bound to consider its ruling on the likelihood of success in balance of harms between the parties. In this particular case, the Court has little difficulty concluding that the balance of harms cascades in the plaintiff's favor. First, in light of the limited number of designs challenged by the plaintiff at this time, the defendants' entire business is not wiped out. Second, as the plaintiff demonstrated through the expert testimony of other banner makers, it is possible to use cloth currently slated for one design in other products (with the exception, of course, of cloth cut to design). Third, the plaintiff also convincingly demonstrated, through introduction of the designs of Debbie Rickless, that it is possible for a banner maker to take the same idea as Stewart and give it a totally different, non-infringing expression.

### E. The Public Interest Will Not be Adversely Affected

██ The public interest will not be adversely affected by the removal of infringing works from the marketplace. To the contrary, it is in the public's interest not to be confused about the origin of the products that it buys. The Court's ruling today does not in any significantly limit the public's choice in this area, nor does it create a monopoly in the plaintiff's favor.

### IV. CONCLUSION

For the reasons set forth in detail above, the Court GRANTS plaintiff's prayer for preliminary injunctive relief. As of the date of the hearing before this Court, June 19, 1989, defendants are ordered to cease selling the eight banner designs detailed herein. Said ban on sales extends to all commercial settings, including but not limited to craft fairs, shops and mail order.

This preliminary injunction shall remain in force until such time as the issue is resolved on its merits.

It is So Ordered.

### ON MOTION FOR BOND

### I. INTRODUCTION AND BACKGROUND

██ Before the Court is the defendants' request for an order requiring the plaintiff

to post a bond. The motion is opposed by the plaintiff.

On June 18, 1989, this Court conducted a hearing on the plaintiff's motion for a preliminary injunction. As grounds for the injunction, the plaintiff asserted that the defendants were infringing on eight banner designs copyrighted by the plaintiff. In an Order dated June 23, 1989, the Court agreed that the defendants were infringing on the plaintiff's copyright, and enjoined the defendants from selling the conflicting designs. Contrary to its usual practice, the Court did not require the plaintiff to post a bond.

The defendants now request that the plaintiff post a bond in the amount of $40,-000.00. That sum is based upon an estimate by Michael Fede that lost sales and damage to the firm's good will amounts to approximately $17,500–$20,000 per year, and that the current litigation will last approximately two years.

The plaintiff asserts that since it has made a "strong showing" of a likelihood of success on the merits, the Court in its discretion may waive the posting of a bond. The plaintiff also characterizes the amount of the bond requested as "exorbitant."

## II. DISCUSSION

The posting of a bond "is not a jurisdictional prerequisite to the validity of a preliminary injunction." *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 896 (1st Cir.), *reh. denied*, 892 F.2d 1115 (1st Cir.1988). However, the presumption in favor of requiring the posting of a bond is high. Fed.R.Civ.P. 65(c) reads in relevant part as follows:

> **(c) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The Court of Appeals for the First Circuit has set forth various factors which a district court should consider in deciding whether or not to require the posting of a bond.

First, at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant. Applicants in commercial cases—merchants, manufacturers, and others—can be assumed capable of bearing most bond requirements, so hardship to them is less of a factor. Second, in order not to restrict a federal right unduly, the impact that a bond requirement would have on enforcement of the right should also be considered. One measure of the impact lies in a comparison of the positions of the applicant and the enjoined party. A bond requirement would have a greater adverse effect where the applicant is an individual and the enjoined party an institution that otherwise has some control over the applicant than where both parties are individuals or institutions.

*Crowley v. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers et al.*, 679 F.2d 978, 1000 (1st Cir.1982), *rev. on other grounds*, 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457, *reh. denied*, 468 U.S. 1224, 105 S.Ct. 19, 82 L.Ed.2d 915 (1984). These standards are well-established in this Circuit. *See Application of Kingsley*, 802 F.2d 571, 578 (1st Cir.1986); *Sierra Club v. Marsh*, 701 F.Supp. 886 (D.Me.1988).

Applying those considerations to the present case, the Court concludes that the requirement of a bond is warranted in this case, particularly given the strong language of Fed.R.Civ.P. 65(c). As the plaintiff is a thriving business, the procurement of the requested bond will not be an severe hardship. By comparison, the record suggests that the defendant firm is considerably smaller, and that the impact of the current injunction is fairly heavy. Should the issuance of the injunction be held erroneous—either by this Court itself or by the First Circuit Court of Appeals—the defendant firm would be left without recompense for its lost sales.

The Court also notes that as these are two separate and distinct businesses involved in this action, the requirement that

a bond be posted will not adversely affect the plaintiff's ability to pursue its federal remedy.

Contrary to the plaintiff's assertion that "a strong showing of likelihood of success on the merits" lessens the need for the posting of a bond, the First Circuit specifically noted that the likelihood of success "seems to be irrelevant to the issue of a bond requirement" except in instances in "where the likelihood of success is extraordinarily high...." *Crowley,* 679 F.2d at 1000 and n. 25. While this Court did find there to be a likelihood of success on the merits at the time of the preliminary injunction hearing, the Court would hesitate to characterize the likelihood of ultimate success as "extraordinarily high."

At the same time, however, the Court is unwilling to accept at face value the potential damage calculation submitted by Michael Fede. The internal inconsistencies of his affidavit, when taken in conjunction with the evidence before the Court of irregular accounting and maintenance of business records, suggest that a bond in a lesser amount is appropriate under the circumstances.

## III. CONCLUSION

Given the nature of the case, and based on the record before it, the Court concludes that a bond of $20,000.00 is reasonable. There being no other factors which mitigate against the allowance of the motion, defendants' request for an order to require the plaintiff to post a bond is ALLOWED. Plaintiff shall post a bond in the amount of $20,000.00 within ten days of the date of this Memorandum and Order.

It is So Ordered.

## ON MOTIONS TO VACATE AND FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Before the Court are several motions arising out of this Brobdingnagian copyright infringement litigation. Specifically, the defendants have filed a motion asking this Court to vacate its order of June 23, 1989, in which the defendants were enjoined from selling certain decorative banners which the Court found to infringe upon the copyright of the plaintiff. The defendants have also asked this Court to enter summary judgment on their behalf. The plaintiff opposes both motions.

In turn, the plaintiff, aggrieved by the defendants' litigatory stance, asks this Court to impose Rule 11 sanctions against the defendants and their counsel for bringing what the plaintiff considers to be unwarranted and groundless motions. The defendants strongly disagree with the plaintiff's characterization of their pleadings.

Finally, the Court has before it plaintiff's motion for an expedited order compelling discovery. In essence, the plaintiff argues that the defendants have failed to produce a whole class of materials, and otherwise acted in an obstreperous and delaying manner. Once again, this motion is hotly disputed by the defendants.

As the Court stated in the most recent hearing on this matter, the parties would be best served by some kind of negotiated settlement of the issues in dispute. The voluminous materials before the Court, however, attest to the fact that neither side has any attention of yielding any ground whatsoever. Faced with the highly regrettable conclusion that judicial intervention is still required, the Court now proceeds to an omnibus resolution of the specific pretrial motions before it.

## II. DEFENDANTS' MOTION TO VACATE THE PRELIMINARY INJUNCTION

### A. Standard of Review

As has been frequently noted, "a court which issues an injunction retains jurisdiction to modify the terms of the injunction if a change in circumstances so requires." *Nicacio v. United States Immigration and Naturalization Service,* 768 F.2d 1133, 1140 (9th Cir.1985); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2961 (1973 & Supp.1989).

The First Circuit Court of Appeals has gone so far as to say that "a sufficient

change in circumstances is a meritorious reason for a court to modify an injunctive or consent decree." *Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 14 (1st Cir.1978). That is particularly true, the Court of Appeals has suggested, when the change of circumstances is such that the injunction now imposes an undue hardship on the affected party. *See, e.g., Pan American Computer Corp. v. Data General Corp.*, 652 F.2d 215, 217 (1st Cir.1981).

 The burden of proof that circumstances have changed sufficiently to support a motion to dissolve an injunction is on the movant. *Burkey v. Ellis*, 483 F.Supp. 897 (D.Ala.1979), *citing United States v. Harrison County, Miss.*, 463 F.2d 1328, 1330 (5th Cir.1972). The onus on the defendants is not a light one. Before this Court will lift the current injunction, it must be persuaded by a preponderance of the evidence that either the facts or governing law have somehow changed, or that the Court was clearly erroneous in its original finding of facts or conclusions of law.

A careful reading of the defendants' memorandum in support of their motion to vacate the preliminary injunction suggests that the defendants are not seeking to introduce any new evidence into this dispute. Rather, relying on the material which was introduced at the preliminary injunction hearing and in pleadings submitted thereafter, the defendants argue that the Court (i) has misconstrued the law governing this dispute; (ii) has erred in its application of the law to the decorative banners in question; and (iii) has erred in the making of various other factual findings upon which the injunction rests.

At the June 1988 hearing, the defendants were not represented by their current counsel. Many of the issues currently before the Court were not put forward at the time. However, in deference to the intensity with which the parties now contest these issues, the Court will review with care and augment where necessary its earlier analysis of the relevant legal standards, as well as its application of those standards to the facts of this case.

The Court begins with a review of the law of copyright in the First Circuit, consisting primarily of the decision by the Court of Appeals in *Concrete Machinery Co. v. Classic Lawn Ornaments Inc.*, 843 F.2d 600 (1st Cir.1988). This slightly expanded reappraisal initially discusses the First Circuit's test used to determine if copying took place, and then turns to the possible defense of independent creation.

*B. Access and Substantial Similarity*

1. Conclusions of Law

As the Court noted in the preliminary injunction order, the First Circuit test to be applied in determining whether or not copying took place has two elements: (i) did the defendants have access to the plaintiff's work, and (ii) is there substantial similarity between the copyrighted and challenged creations? Memorandum and Order, p. 1171, *citing Concrete Machinery Co.*, 843 F.2d at 600.[1]

Reasonably enough, there is no dispute over the issue of access. Accordingly, the Court turns its attention to the stiffer problem of concisely restating the First Circuit test for determining substantial similarity. As will become apparent later in this opinion, the defendants do not actually challenge the Court's view of the law, but rather the Court's application of the law to the defendants' works. Having reviewed both *Concrete Machinery* and its own earlier opinion, the Court is satisfied that its analysis was and is substantially correct.

An understanding of the "substantial similarity" evaluation is complicated by the fact that this second element of the infringement analysis is itself composed of two analytic steps, "dissection" of the copyrighted work and an "ordinary observer" comparison of each party's artistic expression.

---

**1.** Since the issuance of the Court's order last summer, there have been no further modifica-

tions on the First Circuit's views in this area.

As the First Circuit makes absolutely clear, "dissection" is the identification "of those aspects of the expression that are not necessarily mandated by the idea it embodies." *Concrete Machinery*, 843 F.2d at 608 (citation omitted). Such anatomization serves two distinct (albeit related) purposes. First, it helps the Court determine "as a matter of law whether or not the former has copied protected aspects of the latter." *Id.* This aspect of dissection helps the Court focus on those aspects of the copyrighted article which are entitled to protection, and to which the ordinary observer test should be applied. *Id.* at 609.

Second, the Court can make an initial determination of where on the spectrum of copyright protection a particular work falls. The smaller the distance between an idea and the plaintiff's expression of that idea, the smaller the amount of protection proffered the plaintiff by the copyright laws.[2]

■■■ In this Court's view, an accurate pacing of the gap between idea and expression is essential to a proper application of the "ordinary observer" test. Where the underlying idea permits of but few expressions, the creative contributions which an artisan may make are correspondingly limited; the idea itself may be said to dictate much of the form a particular work may take. Under such circumstances, no copyright infringement will be found absent a showing of "near identity" between the copyrighted elements of the plaintiff's work and the alleged infringing aspects of the defendant's work. *Id.* at 606–607.

■■■ Conversely, where a particular concept permits of a large number of expressions, the plaintiff need only show that there is "substantial similarity" between his protected expression and the allegedly infringing elements of the defendant's work. *Id.* at 607.

Undertaking this review of *Concrete Machinery* suggests to the Court only two clarifications of its earlier analysis. First, "near identity" is not really a separate test; rather, it is one facet of the "substantial similarity" analysis applied to the protected elements of an artist's expression. *Compare* Memorandum and Order, at 1171–1172. However, since the Court affirms its earlier conclusion that the "near identity" test is not relevant in this case, this modification has no impact on the issuance of the preliminary injunction.

■■■ Second, to the extent that the language of the Court's earlier analysis suggests that the "substantial similarity" analysis should be applied to the competing works as a whole, it was mistaken. As a review of *Concrete Machinery* makes clear, the only "substantial similarity" which is legally significant is that existing between protected aspects of the plaintiff's work and conflicting elements of the defendant's design.[3] Having reviewed its factual findings, however, the Court concludes that it in fact correctly applied the "substantial similarity" test in this case.

## 2. Findings of Fact

The defendants' chief complaint with this Court's June 23, 1989 order is that it failed to "dissect the works at issue to separate out unprotected expression.…" Defendants' Memorandum in Support of Their Motion to Vacate Preliminary Injunction at 6.

In the Court's order, several pages are devoted to a detailed analysis of the competing banners. *See* Memorandum and Or-

---

**2.** For instance, where the copyrighted work consists of a reproduction of a painting in the public domain, a court might find that copying is as a matter of law not prohibited, or may be found only upon proof of exact duplication of the protected work. *Cf. Concrete Machinery*, 843 F.2d at 606–607, 609 n. 9.

**3.** Researchers in the area of copyright infringement will note a certain looseness in the use of language by courts in this area. Almost without exception, opinions refer to the "substantial similarity" between copyrighted and infringing *works*, thus lumping together protectable and unprotectable elements. The First Circuit's opinion in *Concrete Machinery*, however, requires finer discernment on the part of the Court.

der, at 1173–1174. In each instance, the Court detailed "the following articulable similarities with respect to the *expression* of [the] idea...." *See, e.g.,* Memorandum and Order, at 1173 (emphasis added). By phrasing its discussion as it did, the Court fully intended to direct a reader's attention to a comparison of the plaintiff's and defendants' individual expressions of the particular idea represented on the competing banners.

The Court admittedly contributed to the confusion over this issue by writing in each instance that "an ordinary observer would find substantial similarity between the two *designs."* *See, e.g.,* Memorandum and Order, at 1173 (emphasis added). The word "designs," although defensible, is too broad, implying as it does consideration of both protectable and unprotectable elements of the parties' works. What the Court should have written is that "an ordinary observer would find substantial similarity between the two *expressions* of the underlying idea," thus notifying a reader that the comparison taking place was between only those elements subject to copyright protection.

With that modification firmly stated, the Court expressly adopts the balance of its earlier order. Contrary to the defendants' assertions, the design elements identified by the Court for comparison are entitled to copyright protection, and are not mandated by the particular idea involved. The Court reaffirms its decision that there is substantial similarity between the plaintiff's and defendants' expression of each idea.

### C. Independent Creation

#### 1. Conclusions of Law

■ If a plaintiff has successfully shown that the defendant had access to the protected work, and that there is substantial similarity between the two items, then a rebuttable presumption is created that copying took place. *Keeler Brass Co. v. Continental Brass Co.,* 862 F.2d 1063, 1065 (4th Cir.1988). One of the ways in which a defendant may attempt to rebut the presumption of copying is through evidence which shows that her product was independently created. *Id., citing Original Appalachian Artworks, Inc. v. Toy*

*Loft, Inc.,* 684 F.2d 821, 824 (11th Cir.1982); *Granite Music Co. v. United Artists Corp.,* 532 F.2d 718 (9th Cir.1976). This view has been substantially adopted by the First Circuit. *See Concrete Machinery Co.,* 843 F.2d at 611 (defendant could attempt to show that allegedly infringing statuary was created independently from a non-infringing source).

■ Contrary to the defendants' apparent belief, however, the mere bringing forward of evidence designed to show independent creation is not sufficient to rebut a valid presumption of copying. Such evidence is subjected to the same standard of proof as faced by the plaintiff. *See Concrete Machinery Co.,* 843 F.2d at 606 n. 6 ("trier of fact *may* nonetheless find no copying if the defendant shows independent creation"). As one of the defendants' own authorities put it,

> 'the common practice of defendants at trial in pointing out a similar work created in antiquity, or at least prior to the defendant's creation is of no assistance unless the trier of fact believes that the defendant copied from such work.'

*Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n. 3 (2d Cir. 1977), *quoting* 1 M. Nimmer, *Nimmer on Copyright* § 101.6 at 381–382 (1976).

#### 2. Findings of Fact

■ The defendants also argue that this Court failed to consider evidence submitted by the defendants which was intended to show that Jean Ann Fede derived her designs from independent, non-infringing sources. Admittedly, this Court did not expressly discuss the evidence submitted by the defendants to show independent creation. However, the Court *did* consider all of the evidence put forth by each side, and now expressly states what was implied before, i.e., that it did not find the defendants' evidence of independent creation credible.

Among the evidence which led the Court to this conclusion was testimony from Deborah Rickless, a former associate of the Fedes, which suggested that the Fedes made a conscious effort to alter the designs

just enough to avoid liability. She also testified that during her five months with the Fedes, she never saw the defendant Jean Ann Fede sketch a design. *See* Transcript of Motion for Preliminary Injunction Held in United States District Court Sitting in Springfield, Massachusetts, before Freedman, J. on June 19, 1989 ("Transcript"), at 161–66. This testimony was unchallenged on cross-examination.

The Court's conclusion that Jean Ann Fede's own testimony regarding the sources of her work was not probative is bolstered by the remarkable similarity between the plaintiff and defendants' expressive elements. Other federal trial courts have reached the same conclusion. *See, e.g., Gund, Inc. v. Russ Berrie and Co., Inc.,* 701 F.Supp. 1013, 1022–1025 (S.D.N.Y. 1988) (discounting defendant's claim of independent creation in part due to the overwhelming resemblance to plaintiff's product, and collecting similar cases); *cf. Novelty Textile Mills,* 558 F.2d at 1092 n. 2 (noting that even with evidence of independent creation submitted by defendant, "there may be such substantial similarity that 'no explanation other than copying is reasonably possible,' " *quoting* 2 M. Nimmer, *Nimmer on Copyright,* § 141.2 at 613–14 (1976)). These cases amply reflect this Court's view of the present dispute; given the indisputable access and substantial similarity between the two parties' banners, the evidence of independent creation advanced at the hearing by the defendants was simply not persuasive.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Pursuant to the provisions of Fed.R. Civ.P. 56(c), this Court has an obligation to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact...."

In order to avoid the imposition of summary judgment, the plaintiff must persuade this Court that there is a dispute about "facts that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, Flag Fables must also show that the dispute about the facts is genuine, that is, that "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252, 106 S.Ct. at 2512.

In weighing the evidence before it to determine if it is more than a "scintilla," *id.,* or "mere allegations," Fed.R.Civ.P. 56(e), this Court has a duty to " 'look at the record in ... the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), *quoting Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989). "If, after this canvassing of the material presented, the district court finds that *some* genuine factual issue remains in the case, whose resolution one way or another *could* affect its outcome, the court must deny the motion." *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988) (emphasis in original).

### B. Have the Plaintiff's Copyrights Been Forfeited?

The defendants strenuously argue that the plaintiff is not entitled to copyright protection in this case. Specifically, the defendants argue that the works in question were published without notice in late 1984 or early 1985, and that the plaintiff did not take reasonable steps to cure the omission as required by statute. Defendants' Memorandum in Support of Their Motion for Summary Judgment at 1–10. The plaintiff rejoins that it has in fact taken reasonable steps to cure any omission, in part based on an analysis of the plaintiff's banners as "useful articles" within the meaning of the Copyright Act,

17 U.S.C. §§ 101 *et seq.*[4] Plaintiff's Memorandum Opposing Motion for Summary Judgment at 4–14. The defendants characterize the plaintiff's "useful article" argument as being "born of desperation." Defendants' Reply to Plaintiff's Memorandum Opposing Motion for Summary Judgment at 3.

### 1. Copyright Notice Requirements

The dispute between the parties with respect to notice is governed by the provisions of 17 U.S.C. § 405, which state in relevant part:

(a) **Effect of omission on copyright.** With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, the omission of the copyright notice described in sections 401 through 403 [17 U.S.C. §§ 401–403] from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or

(3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

The parties agree that only the second of the above saving clauses is relevant; in order to avoid the imposition of summary judgment, the plaintiff must be able to show that some genuine issue of material fact obtains with respect to both proper registration and reasonable efforts to cure publication without notice.

### 2. Registration

The "[c]opyright in a work created on or after January 1, 1978 subsists from its creation and ... endures for a term consisting of the life of the author and fifty years after the author's death." 17 U.S.C. § 302. An author may seek to register the work with the Copyright Office any time during the subsistence of the copyright. 17 U.S.C. § 408(a). However, if an author wishes to have standing to sue to protect his copyright, then registration is a prerequisite to bringing suit. 17 U.S.C. § 411(a).

■ The registration requirement is even more stringent in those cases where an author has published his work. While publication without notice does not *per se* invalidate a copyright, *Hagendorf v. Brown*, 699 F.2d 478, 480 (9th Cir.), *amended* 707 F.2d 1018, 1019 (9th Cir. 1983), an author must register the published work within five years of the first publication in order to preserve his rights. 17 U.S.C. § 405(a).

In the hearing last summer, the Court received evidence to the effect that the first publication of the plaintiff's works occurred at some time in late 1984 or early 1985. Memorandum and Order, at 1170. Testimony and documentary evidence was also received which tended to show that registration for each of the works in question was obtained within the five-year period. *Id.* at 1170–1171. Defendants challenge the plaintiff's characterization on the registration form of its works as "unpublished," but do not successfully attack the essential validity of the registration certificates. At most, the defendants have stripped the certificates of the judicial presumption of validity which the certificates confer on the plaintiff's copyrights. *See* 17 U.S.C. § 410(c). However, the defendants

---

**4.** 17 U.S.C. § 101 defines "useful article" as follows:

A "useful article" is an article having an intrinsic utilitarian function that is not mere-

ly to convey the appearance of the article or information. An article that is normally a part of a useful article is considered a useful article.

having brought forward no additional evidence to illustrate in what manner the certificates might be defective (or the legal impact of such defects), the Court concludes that the certificates submitted by the plaintiff do show proper registration. At the very least, the Court concludes that there is a genuine issue of material fact with respect to this issue sufficient to outweigh a motion for summary judgment.

### 3. Reasonable Effort To Cure

The defendants save their heaviest litigatory barrage for the issue of curing. First, the defendants argue that the plaintiff cannot cure under section 405(a)(2) in this instance because the omission of the copyright notice was "deliberate." The defendants claim that "deliberate" omissions cannot be "discovered" as contemplated by the statute. Second, the defendants suggest that the plaintiff's copyrights have lapsed because Flag Fables did not make a reasonable effort to affix notice to all works subsequently distributed.

#### a. "Deliberate" Omissions Can Be "Discovered"

■ In support of their argument that deliberate omissions cannot be "discovered" or cured, the defendants rely heavily on *Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc.*, 552 F.Supp. 1305 (S.D.N.Y.1982). They strongly agree with Judge Sand's conclusion that since "one cannot 'discover' an omission that has been deliberate," *id.* at 1310, section 405(a)(2) permits the cure of unintentional omissions alone. *Id.* at 1311; Defendants' Memorandum in Support of Their Motion for Summary Judgment at 5–6. In this instance, defendants suggest, the omission of copyright notices from Flag Fables' products could only have been deliberate, since Pam Stewart had complete control over production of the products at issue.

Unfortunately for the defendants, *Beacon Looms* has not withstood the tides of time. In a decision handed down three years later, the Second Circuit concluded that Judge Sand had overlooked critical legislative history which made it clear section 405(a)(2) was intended to apply to both *intentional* and *unintentional* omissions. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 195–196 (2d Cir.1985). The Second Circuit specifically held that an omission of notice, even if deliberate, is subject to cure. *Id.* at 196.

#### b. Plaintiff Made a Reasonable Effort to Cure

■ Testimony received by the Court at the preliminary injunction hearing in June 1989, suggests that the founder of Flag Fables, Pam Stewart, "discovered" the omission of copyright notice sometime in early 1985. Transcript at 34–35. Stewart testified that at the advice of a market consultant, she began placing copyright notices on her banners within about six months of starting her business. *Id.* She also stated that the copyright notice consisted of her name, a "c" in a circle and the date. *Id.* at 36.

The defendants, however, have submitted affidavits tending to show that the plaintiff sold banners after "discovery" of the omission which allegedly did not contain a proper copyright notice. *See* Affidavits of Phillip Champagne, Kathleen Hill and Sandra Whittaker, attached to Defendants' Memorandum in Support of Their Motion for Summary Judgment. Specifically, the defendants argue that the plaintiff has sold banners lacking either the appropriate copyright symbol or the date of first publication, both being a violation of 17 U.S.C. § 401(b).[5]

The plaintiff makes two responses. First, it argues that the reasonableness of

---

**5.** 17 U.S.C. § 401(b) provides as follows:

**(b) Form of Notice.** If a notice appears on the copies, it shall consist of the following elements:

(1) the symbol © (the letter C in a circle), or the word "Copyright", or the abbreviation "Copr."; and

(2) the year of first publication of the work; in the case of compilations or derivative works incorporating previously published material, the year date of first publication of the compilation or derivative work is sufficient. The year date may be omitted where a pictorial, graphic, or sculptural work, with accompanying text matter, if any, is reproduced in or on greeting cards, postcards, stationery, jewelry, dolls, toys, or any useful articles; and

an effort to cure is a question of material fact, and is in itself sufficient to avoid the imposition of summary judgment. As a matter of law, that is correct, and is technically dispositive of this issue. *See Rachel v. Banana Republic, Inc.*, 228 U.S.P.Q. 416 (N.D.Cal.1985).

■ However, the plaintiff's second argument will invariably arise at trial on this matter, and should be addressed now. Flag Fables claims that its banners are "useful articles" within the meaning of 17 U.S.C. § 401(b)(2), and therefore are exempt from the requirement that the copyright notice contain the year date of first publication.[6] Not surprisingly, there is no case law construing whether or not decorative flags come within the definition of "useful articles," and the definition contained in 17 U.S.C. § 101 (quoted *supra*) is not overly helpful.

The plaintiff's own suggestions of why a banner should be considered "useful" offer little assistance. The plaintiff describes a flag's "utilitarian" aspects as including "a pole, a method to pivotally [sic] ... secure the pole, and means for securing a fabric to the pole." Plaintiff's Memorandum Opposing Motion for Summary Judgment at 13. The "utilitarian" aspects of a flag identified by the plaintiff, however, are "utilitarian" only to the flag itself, and to its successful display.[7] What is actually at issue in determining if the "useful article" exemption applies is whether or not the article in question has a function apart from the display of the protected design. For instance, greeting cards and postcards are "useful articles" because they may function as greeting cards and postcards whether or not any design has been placed on them.

The defendants claim that "[b]y no stretch of logic or the English language can a decorative flag be called a useful article, having an 'intrinsic utilitarian function.'" But the defendants' pronouncement begs the question. The allegedly "useful article" at issue is not a *decorative* flag, but rather simply a *flag;* it does not become decorative until the plaintiff's particular designs are affixed to it. In this Court's view, a flag or banner does qualify as a useful article in and of itself, as it may function as a flag even in the absence of any design.[8]

The defendants may argue, and rightly so, that the bulk of a flag's utility lies in the fact that it offers such a visible medium for displaying designs. Nonetheless, that does not defeat the conclusion that a flag, stripped of all design, is still a "useful article." In this sense, the flag is not unlike a doll (another example of a useful article contained in section 401(b)(2)), which may still function as a doll in the absence of any ornamentation, but which rises to its full usefulness and delight with the addition of an artist's particular design.

The Court concludes as a matter of law that designs placed on flags are entitled to the "useful article" exemption contained in 17 U.S.C. § 401(b)(2). At trial, however, the plaintiff will bear the burden of demonstrating that it made reasonable efforts to comply with the requirements of sections 401(b)(1) and (b)(3).

## IV. PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

### A. Arguments of the Parties

The plaintiff urges this Court to award it the costs and attorneys' fees associated

---

(3) the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner.

**6.** Plaintiff does not respond to defendants' allegations regarding the absence of the © symbol. As there is no parallel "useful articles" exemption for the omission of the © symbol, a determination of the reasonableness of the effort to cure will depend in large part on the evidence submitted on this point.

**7.** Under the plaintiff's reasoning, almost anything could be considered a "useful article."

For instance, a painting would be a useful article because it has various utilitarian elements, including a frame, a means for attaching the canvas to the frame, and a wire by which to hang it on a wall.

**8.** For instance, in a row of identical tract houses, a flag may be hung to tell guests where festivities are taking place. It makes no difference to the flag's function as a marker what design is on the flag, or indeed, whether there is any design on the flag at all.

with opposing the defendants' Motion to Vacate the Preliminary Injunction and Motion for Summary Judgment. The plaintiff argues that "neither motion is 'warranted by existing law' ...; nor has Defendants' counsel indicated that the motions are based upon a good faith argument for the extension, modification or reversal of existing law." Plaintiff's Memorandum Supporting its Motion for Rule 11 Sanctions at 1. The sole purpose of the motions, in the plaintiff's view, was "to wear Plaintiff down through litigation by economic attrition." *Id.* at 3.

The defendants implicitly argue that their motions were adequately grounded in both law and fact, and reject the plaintiff's contention that either pleading was frivolous.

### B. Applicable Standard

Fed.R.Civ.P. 11 states in relevant part: The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

This Circuit has adopted the "objective test" of "reasonable inquiry" espoused in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985); *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–05 (1st Cir.1988). Under the "objective test" standard, a district court *shall* impose sanctions

against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after a reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is warranted by existing law or a good faith argument

for the extension, modification or reversal of existing law.

*Eastway*, 762 F.2d at 253–54 (emphasis in the original).

### C. Analysis

 Under the legal standard by which this Court is bound, an award of sanctions is not appropriate as to either motion. In particular, the defendants' motion to vacate was based on a reasonable belief that this Court's interpretation of the relevant First Circuit authority was incorrect. And, in fact, the defendants' arguments did cause the Court to modify its understanding of the leading case.

The defendants' summary judgment motion is much weaker, but not so weak as to trigger Rule 11. On the one hand, the plaintiff is correct that the defendants' attorney, who is obviously well-versed in the law of intellectual property, should not rely on a case so obviously discredited as *Beacon Looms, supra.* On the other hand, the factual allegations raised by the defendants were legitimate potential grounds for an award of summary judgment. Weighing the pleadings as a whole, the Court concludes that Rule 11 sanctions are not appropriate.

### V. PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Finally, the Court turns to the plaintiff's motion for expedited discovery. On July 18, 1989, plaintiff served upon the defendants a First Request for the Production of Documents and Things ("Plaintiff's First Request"). While it appears that some production has occurred, the plaintiff is aggrieved by the defendants' refusal to identify "all documents upon which Defendants intend to rely in support of their allegations alleged in the Answer to the Complaint[.]" Plaintiff's First Request at 3. Defendants objected to the request, stating that "it seeks protected work product and seeks disclosure of the mental impressions, opinions, and legal theories of defendants' counsel." Defendants' Response to Plaintiff's First Request for Production of Documents and Things ("Defendants' Response") at 2. The defendants also argue

that the plaintiff's request constitutes an effort to restrict the natural development of the defendants' case by committing them to the use of certain documents and claim that if they are forced to identify the documents upon which they intend to rely at trial, they will be unfairly forced to disclose their theory of the case. Defendants' Opposition to Plaintiff's Motion for an Expedited Order Compelling Discovery at 2.

As courts in this district have recognized, a party resisting discovery "has the burden of showing some sufficient reason why discovery should not be allowed...." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1976); *see also Fairbanks v. American Can Co.*, 110 F.R.D. 685, 687 (D.Mass.1986) ("[T]he party opposing discovery has the initial burden of proof on the issue of whether the documents sought are attorney work product," *citing Kleinerman v. United States Post. Serv.*, 100 F.R.D. 66, 70 (D.Mass.1983)). In this instance, the defendants must make some showing that the requested materials fall within the scope of at least one of the two alleged exemptions.

## A. Work Product

 Fed.R.Civ.P. 26 states that discovery may be had of any matter, not privileged, which relates to the subject matter involved in the pending action. As counsel are undoubtedly aware,

> the broad mandates of Fed.R.Civ.P. 26 demand that the scope of discovery be liberally construed so as to provide both parties with information essential to proper litigation on all the facts. 'The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information, unless the information is privileged.'

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D.Mass. 1984) (citations omitted), *quoting Donovan*

*v. Prestamos Presto Puerto Rico, Inc.*, 91 F.R.D. 222, 223 (D.P.R.1981).

Among the material privileged is anything which may legitimately be classified as attorney work product. Fed.R.Civ.P. 26(b)(3) prevents discovery of documents and tangible things which have been prepared in advance of litigation, unless a showing can be made that there is a substantial need for such materials and an inability to obtain the same information by other means without undue hardship. However, work product protection "does not extend to 'materials assembled in the ordinary course of business ... or for other nonlitigation purposes....'" *Fairbanks*, 110 F.R.D. at 687, *citing APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 17 (D.Md.1980).

The Court may reasonably infer from the pleadings that the defendants intend to defeat the plaintiff's claims by illustrating that there was no copying of the plaintiff's designs. As has been previously discussed, the primary means of doing so would be to show independent creation of the challenged designs by Jean Ann Fede. The documents that the defendants would naturally rely upon in proving independent creation would be sketches, drawings, source materials and so forth. Such materials, if they exist, are the natural by-products of an artist's creative process. There is no work product protection for any materials of this nature.[9] The plaintiff is entitled to their production, and to the production of any other materials within the scope of this discussion.

## B. Trial Strategy

 The Court is aware that the attorney work product exception is designed to protect the mental impressions and thought processes of an attorney. *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 143 (D.Mass.1988), *citing Hickman v. Taylor*, 329 U.S. 495, 511–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451

---

**9.** The defendants cannot have it both ways. If the materials purporting to show independent creation were actually produced in anticipation of litigation, then this Court is going to have a hard time accepting the defendants' argument that Jean Ann Fede's designs were created three to four years before this litigation even began.

(1947); *Flynn v. Church of Scientology Intern.*, 116 F.R.D. 1 (D.Mass.1986). A prime product of the thought processes of an attorney is the strategy that an attorney will pursue at trial. The defendants are correct in asserting that a party may not use the liberal rules of discovery to engage in inquiry about the way the other side intends to conduct its case. *See Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339 (D.Mass.1982).

However, that concern must be balanced against the fundamental purpose of discovery, which is to eliminate the element of surprise at trial. *See Hickman*, 329 U.S. at 507, 67 S.Ct. at 391. The Court's need to adhere to the broader rule is particularly compelling when a party, like the defendants in this case, bases its refusal to allow discovery on a rote recitation of privilege. The Court is at a loss to determine exactly what trial strategy faces the risk of being unfairly exposed, particularly in light of the fact that the outline of the defendants' perfectly straightforward case has been clearly laid out in the answer and subsequent memoranda. Production of the documents requested by the plaintiff will in no way prejudice the defendants, and will promote a swifter resolution of this matter.

## VI. CONCLUSION

For the reasons set forth above, the Court makes the following rulings:

A. The defendants' motion to vacate the preliminary injunction is DENIED.

B. The defendants' motion for summary judgment is DENIED.

C. The plaintiff's motion for sanctions is DENIED.

D. The plaintiff's motion for expedited discovery is ALLOWED. Pursuant to the Court's authority under Fed.R.Civ.P. 37(a)(4), the defendants and their attorney are ordered to pay the plaintiff's attorney fees and costs incurred in bringing this motion to compel discovery.[10] In the time remaining before trial, both parties are

urged to comply not merely with the letter but also with the spirit of the Federal Rules of Civil Procedure.

Trial of this matter is set for May 7, 1990 at 10:00 a.m. Counsel for the parties will appear before the Court for a final pre-trial conference on April 10, 1990 at 2:00 p.m. Counsel will note that pursuant to the provisions of Fed.R.Civ.P. 65(a)(2), the evidence received by the Court during the preliminary injunction hearing need not be repeated at trial. Counsel should plan their trial strategy accordingly. If the Court's guidance is necessary to effect further discovery, counsel shall file the requisite motions.

It is So Ordered.

---

10. To prevent any confusion, the Court explicitly states that the award of fees applies to this motion only. The Court, in the exercise of its discretion, determines that an equitable award

is $250.00; this amount will be paid directly to plaintiff's counsel within ten (10) days of the issuance of this Order.