**CABOT CORPORATION et al., Plaintiffs,**

v.

**ASHLAND OIL, INC., Defendant.**

**Civ. A. No. 84–3165–G.**

United States District Court, D. Massachusetts.

Nov. 15, 1984.

Lee Johnson, Harold Hestnes, Hale & Dorr, Boston, Mass., for plaintiffs.

R. Reed Baer, John R. Hally, Nutter, McClennen & Fish, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

GARRITY, District Judge.

On October 5, 1984, plaintiffs filed a complaint seeking declaratory and injunctive relief, as well as an application for a temporary restraining order and a motion for preliminary injunction. At a hearing held on that same date, plaintiffs obtained a temporary restraining order from Judge Nelson, which was extended in force through October 22, 1984 by agreement of the parties. A subsequent hearing was held by this court on October 19, 1984 on plaintiffs' motion for preliminary injunction. At that time, the court ordered that the temporary restraining order remain in force until it ruled on plaintiffs' motion for a preliminary injunction. After hearing oral argument and reviewing briefs and affidavits submitted by the parties, the court grants plaintiffs' motion for preliminary injunction. The court further orders that plaintiff provide bond in the amount of $750,000.

This action arises out of a sales agreement ("Agreement") entered into by the parties on August 26, 1983, in which defendant agreed to sell to plaintiffs substantially all of its international carbon black operations. The sale includes defendant's operation known as Ashland Chemical (France) S.A. ("ACF"), located in Port Jerome France, which is the subject of the present dispute.

According to section 3 of the Agreement, the different operations owned by defendant, including ACF, are to be sold to plaintiffs in separate "transactions." Section 10 of the Agreement provides that the closing of each particular transaction is subject to the satisfaction of specified conditions precedent, including the receipt of all governmental approvals deemed necessary by defendant's legal counsel. Pursuant to this provision in the Agreement, on October 25, 1983 plaintiffs notified the French Ministry of Economy, Finance and Budget and the Ministry of Industry of their intent to acquire ACF. Government approval was required under French competition law because plaintiffs already owned a carbon black plant at Berre, France and, therefore, the acquisition of ACF would give plaintiffs more than 40% of the French national carbon black market. On June 19, 1984, the Ministries entered a joint decree enjoining plaintiffs from acquiring ACF.

After the issuance of the decree, the parties met to discuss an appeal of this decision and explore alternatives which would permit plaintiffs to purchase ACF. In August of 1984, plaintiffs' representatives also met with French officials and proposed selling their French plant at Berre in order to reduce their market share below 40%. Under the terms of the proposal, plaintiffs would sell its plant to an independent manufacturing company, but retain an option to repurchase the plant in the event of a successful appeal of the decree. The French authorities indicated that the French Administration would approve this proposal. Plaintiffs have since appealed the decision of the Ministries to the French Administrative Superior Court and are in the process of negotiating the

sale of their plant at Berre to an independent manufacturing company.

Defendant chose not to participate in the appeal of the Ministries' decision. Furthermore, on September 26, 1984, defendant sent plaintiffs a letter stating that as a result of the June 19, 1984 decree enjoining plaintiffs from acquiring ACF, defendant concluded that it was legally impossible for plaintiffs to satisfy the conditions precedent to closing the sale. Therefore, defendant notified plaintiffs of its intent to pursue negotiations for the sale of ACF with other potential buyers, particularly with a German carbon black manufacturer, Degussa A.G. Plaintiffs subsequently brought the instant action, and now seek to preliminarily enjoin defendant from either selling its interest in ACF or negotiating with potential buyers for the sale of that interest.

■ Before issuing a preliminary injunction, the court must determine whether plaintiffs' legal remedies are inadequate. Because this action involves the sale to plaintiffs of defendant's *entire* French operation, damages would be virtually impossible to calculate. *See* Restatement (Second) of Contracts, §§ 357–360. Plaintiffs have persuasively shown that ACF is unique due to its geographical location, proprietary technology, quality of product and skilled personnel. Therefore, we conclude that plaintiffs' legal remedies are in fact inadequate.

Plaintiffs must establish the following four criteria in order to be entitled to a preliminary injunction: (1) that they have exhibited a likelihood of success on the merits; (2) that they will suffer irreparable injury if the injunction is not granted; (3) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Auburn News*

*Co. v. Providence Journal Co.*, 1 Cir.1981, 659 F.2d 273, 277, *cert. denied*, 1982, 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461.

■ With respect to the first criterion, the court finds that plaintiffs are likely to succeed on the merits on both the questions of contract interpretation and impossibility of performance. Contrary to defendant's interpretation of the Agreement, we hold that although the contract requires that the parties proceed "as rapidly as possible" toward the closing of each transaction (section 4(a)), they are not presently entitled to terminate their agreement to sell ACF due to the French Ministries' decree. Section 4(d) of the Agreement provides: "If any transaction is not closed due to non-fulfillment of a condition precedent by June 30, 1985, that transaction shall not be closed thereafter unless separately agreed to between the parties ...." Therefore, under the terms of the Agreement, defendant is not entitled to terminate the ACF transaction for failure of a condition precedent until June 30, 1985.[1]

■ Defendant next argues that the French Ministries' decree enjoining plaintiffs from acquiring ACF makes the transaction impossible to perform, thereby excusing defendant from any further obligation with respect to the sale. New York recognizes legal impossibility as an excuse for performance.[2] *Metpath, Inc. v. Birmingham Fire Insurance Co. of Pennsylvania*, Sup.Ct.1982, 86 A.D.2d 407, 449 N.Y.S.2d 986, 989. Furthermore, under New York law, an injunction may give rise to a claim of impossibility of performance. *Lowenschuss v. Kane*, 2 Cir.1975, 520 F.2d 255. In *Lowenschuss*, the Second Circuit held that a preliminary injunction, while not final as a matter of law, could form the basis of a claim of impossibility, if, in view of the large amount of time and money required to appeal the injunction, as well as

---

**1.** Section 11 of the Agreement provides that a "Satellite Agreement" may be terminated "by failure of any condition to the terminating party's obligations." Because no Satellite Agreement has been executed for the ACF transaction, this section is inapplicable.

**2.** Section 13(a) of the Agreement provides that the creation, interpretation, performance, and discharge of this contract shall be governed by New York law.

the consequent tie-up of capital, the appeal could be viewed as an "impractical venture."

Without plaintiffs' alternative proposal to sell their carbon black plant at Berre, France, it is quite possible that the sale of ACF could be considered legally impossible to perform. While there is a clear divergence of opinion in the affidavits of the French attorneys as to the probability of success of plaintiffs' appeal of the Ministries' decision, the likelihood that the appeal will be decided before June 30, 1985 seems slight. Therefore, without considering plaintiffs' alternative plan to get French government approval of the sale of ACF, this appeal might well be deemed an "impractical venture." However, plaintiffs' affiant, Samuel B. Coco, has testified that plaintiffs are currently negotiating the sale of their operations at Berre to an independent manufacturing company under the terms discussed with French officials.[3] It is quite possible that plaintiffs will be able to complete this sale, and thereby obtain the requisite French government approval, by the end of June, 1985. Therefore, we conclude that it is not impossible for plaintiffs to satisfy the conditions precedent to the sale of ACF at the present time, either by selling its plant at Berre or by a successful appeal of the decree of the French Ministries.

The court further finds that the balance of hardship lies in favor of plaintiffs. Denial of a preliminary injunction would enable defendant to sell ACF to another concern. Because plaintiffs' damages are not quantifiable, this would cause plaintiffs irreparable harm by effectively denying them a complete remedy. In contrast, any potential harm to defendant as a result of being wrongfully enjoined can be remedied with money damages. Furthermore, a preliminary injunction in this case will preserve the *status quo*, since it will prevent defendant from transferring ACF to a third party. Finally, we see no possible adverse effect that an injunction might have on the public interest.

The court, therefore, grants plaintiffs' motion for preliminary injunction. Defendant is enjoined from transferring to any entity other than plaintiffs its interest in ACF until further order of this court. Defendant is also enjoined from participating in any negotiations concerning the sale of ACF with any entity except plaintiffs.[4]

Finally, after considering the parties submissions on the point, the court orders that plaintiffs provide a bond in the amount of $750,000, which is approximately one-fourth the amount requested by defendant. We conclude that a bond in this lesser amount is reasonable primarily because we find that the likelihood of a sale to Degussa, as well as its terms and timing, are more speculative than submitted by defendant. Therefore, any loss of opportunity to defendant to invest the proceeds of a possible sale to Degussa at a favorable rate of interest is also speculative. Assuming that the court has erred in freezing the *status quo* and enjoining negotiations until the merits have been decided, defendant will have been damaged primarily by its inability to dispose of ACF as soon as possible, since, according to defendant, its value is diminishing due to monthly losses. However, to some extent these losses appear to be only a matter of accounting between a parent corporation and its wholly owned subsidiary. Balancing these various factors and anticipating that the case will be

**3.** During the hearing on October 19, 1984, Mr. Coco wrote the name of the manufacturing company on a piece of paper and sealed that paper in an envelope. The envelope has been impounded pursuant to court order.

**4.** Plaintiffs argue that negotiations by defendant with any other entities, particularly Degussa, are detrimental to plaintiffs' appeal of the Ministries' decree. This argument, in conjunction with section 3(c) of the Agreement, which provides that for the payment of $2 million, defendant agrees not to "design, construct or operate any carbon black plant, or license or assist in any way any other individual, entity or government to design or operate such a facility in any place in the world except the U.S.A. and Canada during the period beginning with the date hereof [August 26, 1983] and ending June 30, 1985," warrants our granting of plaintiffs' request that all negotiations be enjoined.

ripe for a hearing on the merits in the early spring of next year,[5] we conclude that a bond in the amount of $750,000 will be adequate.

## PRELIMINARY INJUNCTION

After hearing oral argument and considering memoranda and affidavits submitted by the parties, and on the basis of findings and conclusions stated in the memorandum of decision filed contemporaneously herewith, the court grants plaintiffs' motion for preliminary injunction, subject to plaintiffs' posting security in conformity to Rule 65(c), Fed.R.Civ.P. and in a form approved by the court, in the sum of $750,-000.

It is hereby ordered that defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert with them who receive actual notice of the order by personal service or otherwise, are enjoined from

(1) transferring defendant's interest in Ashland Chemical (France) S.A. to any person, firm, or corporation other than plaintiffs and

(2) negotiating concerning the transfer of such interest with any person, firm or corporation other than plaintiffs.

This injunction shall become effective when plaintiffs' security of $750,000 has been approved by the court and shall remain in effect until further order of this court.

---

**5.** In this connection the parties are requested to file within two weeks statements of position as to advancing trial of this action on the merits.

*See* Rule 65(a)(2), Fed.R.Civ.P. Most relevant facts seem susceptible to stipulation. Affidavits might be received in lieu of direct testimony.