**COSTELLO, ERDLEN &
CO., INC., Plaintiff,**

v.

**WINSLOW, KING, RICHARDS
& CO., et al., Defendants.**

**Civ. A. No. 89–814–T.**

United States District Court,
D. Massachusetts.

April 27, 1992.

Peter A. Biagetti, Kenneth M. Bello, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for Costello, Erdlen & Co., Inc.

Clarence V. LaBonte, Jr., Russian & LaBonte, Lexington, Mass., for Winslow, King, Richards & Co., and Bishop & Co., Inc.

Esther J. Horwich, Boston, Mass., for William F. Winslow.

## MEMORANDUM AND ORDER

TAURO, Chief Judge.

Plaintiff, Costello, Erdlen & Co. ("Costello"), brings this action against defendants Winslow, King, Richards and Co. ("WKR") and William Winslow ("Winslow") for alleged copyright infringement of a 91–page work entitled "Job Hunting Guide." [1] Specifically, plaintiff claims that it provides outplacement counseling services to former employees of client companies. Defendant Winslow worked for Costello from August 1983 to February 1985. Winslow then worked for WKR from July 1986 to November 1988, providing outplacement services. Plaintiff claims that, when Winslow left Costello, he took with him the Job Hunting Guide, and, while at WKR, created a document called "Career Search Guide." Plaintiff claims the Career Search Guide contains passages which are identical or almost identical to ones found in the Job Hunting Guide.

Plaintiff has filed a Motion for Partial Summary Judgment. Other motions are also pending in this case.

### A. *Plaintiff's Mtn for Partial Summary Judgment*

To prevail on a claim of copyright infringement, plaintiff must show (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer. *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 605 (1st Cir.1988). Plaintiff filed a Motion for Partial Summary Judgment as to the sec-

ond prong—i.e., whether defendant had copied the protected work. Plaintiff may establish copying by showing (1) access to the copyrighted work and (2) substantial similarity between the copyrighted work and WKR's work. *Id.* at 606.

Magistrate Judge Bowler held a hearing on this motion and issued an opinion recommending that the court allow the motion as to access, but deny it as to substantial similarity.

Defendants object to the finding of "access." Magistrate Bowler found, however, that defendant Winslow had worked at Costello, and that, when he left in 1984, he took with him the Job Hunting Guide that was produced in 1982. Costello claimed, and Magistrate Bowler agreed, that the version that defendant allegedly copied, the 1987 guide, was virtually identical to the 1982 guide. Magistrate Bowler concluded, therefore, that Winslow, and thus WKR, had access to the alleged copyrighted material.

After reviewing the record, *see* Rules for United States Magistrates in the United States District Court for the District of Massachusetts Rule 3.(b) (hereinafter "Magistrate Rule"), the court agrees with this determination and hereby ACCEPTS and ADOPTS the recommendation of the Magistrate Judge.

### B. *Other Motions*

The court hereby ACCEPTS and ADOPTS the Report and Recommendation of the Magistrate Judge on Plaintiff's Motion for Preliminary Injunction, as defendant has failed to file timely objections. *See* Magistrate Rule 2(b).

Plaintiff's unopposed Motion to File Amended Complaint is ALLOWED.

Defendants' Motion to File Amended Answer and Counterclaim is DENIED. *See Quaker State Oil Refining Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1517 (1st Cir. 1989) ("[P]arties seeking the benefit of the

---

**1.** Plaintiff's complaint includes counts for (I) copyright infringement; (II) conversion; and (III) Mass.Gen.L. ch. 93A violations.

rule's liberality have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of suggested amendment."); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 138 (1st Cir.1985) (While leave to amend "shall be freely given when justice so requires," it may be denied "in the face of extraordinarily long and essentially unexplained delay."), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986).

Defendants' Motion for Summary Judgment is DENIED.

Plaintiff's Motions to Stay and to Strike Motion for Summary Judgment are, therefore, MOOT.

It is so ordered.

## REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 64) and PLAINTIFF COSTELLO, ERDLEN & COMPANY, INC.'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR HEARING (DOCKET ENTRY # 81)

### October 9, 1991

BOWLER, United States Magistrate Judge.

The plaintiff, Costello, Erdlen & Company, Inc. ("Costello"), filed this action against the defendants, Winslow, King, Richards & Company ("WKR") and William F. Winslow ("Winslow") for copyright infringement, conversion and violation of Mass.Gen.L. ch. 93A. Costello seeks partial summary judgment pursuant to Rule 56(d), Fed.R.Civ.P., against WKR under its infringement claim [1].

Costello seeks entry of partial summary judgment of the following material facts: (1) that WKR had access to Costello's job guide; and (2) that WKR's job guide [2] is substantially similar to that of Costello's. (Docket Entry # 64). Defendant opposes establishing the above material facts as a matter of law because: (1) as a preliminary matter, Costello must show that its job guide is "protected"; and (2) material questions of fact exist as to access [3] and substantial similarity. (Docket Entry # 74).

Costello also moves for a preliminary injunction enjoining WKR, in part, from diverting assets to Bishop & Company, Inc., a company WKR formed in May 1990 to market outplacement services. (Docket Entries ## 81 & 82). WKR opposes the motion. (Docket Entry # 84).

On August 15, 1991, this court conducted a hearing and took the motions under advisement in order to issue written findings. This court will now address, respectively, the motion for partial summary judgment (Docket Entry # 64) and the motion for a preliminary injunction (Docket Entry # 81).

## I. PLAINTIFF'S MOTION FOR PARTIAL MOTION SUMMARY JUDGMENT (DOCKET ENTRY # 64)

### Background

Costello, a Massachusetts corporation, provides outplacement counseling services to former employees of client companies.

1. (Docket Entry # 9, Count I). Section 106 of Title 17 gives a copyright owner "exclusive rights", subject to limitations contained in sections 107 through 118. To enforce these rights, section 501 authorizes "a cause of action for any infringement." 17 U.S.C. § 501(b). *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 843–4 (1st Cir.), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985) (quoting statute). Sections 502 through 505 delineate a number of remedies. 17 U.S.C. §§ 502–505. Registration is a prerequisite to maintaining suit. 17 U.S.C. § 411. Costello's amended complaint alleges registration and Costello provided copies of the three registered job guides. (No Docket Entry No. Assigned).

2. Two job guides are allegedly infringing, The New Job Hunting Handbook and The Career Search Guide. (Docket Entry # 64, ex. F & G). The guides are virtually identical, although the former guide is published by Winslow and the latter guide is published by WKR. Inasmuch as Costello moves for partial summary judgment against WKR, this court will primarily discuss the alleged infringement of The Career Search Guide. (Docket Entry # 64, ex. F).

3. Subsumed within this argument, WKR asserts that Costello fails to identify which of its numerous job guides is purportedly infringing. As stated *infra*, however, Costello brings its partial summary judgment motion alleging infringement of the Job Hunting Guide, attached as exhibit E. (Docket Entry # 64).

Winslow, a former Costello employee [4], worked for WKR from July 1986 to November 1988 by providing outplacement services. Allegedly in 1986 and thereafter, WKR used a job hunting guide, prepared by Winslow, that purportedly infringes Costello's copyrights [5].

On April 7, 1988, the Copyright Office issued certificates to three of Costello's job hunting guides, created by Costello in 1982, 1985 and 1987 [6]. (Docket Entry # 74, ex. E). In support of the partial summary judgment motion, Costello refers this court to the job hunting guide contained in exhibit E. (Docket Entry # 64, ex. E) [7]. By affidavit, J. Paul Costello, president of Costello, Erdlen & Company, Inc., states that exhibit E is a true copy of the job hunting guide used by Costello in 1985 at the time Winslow left the company. (Docket Entry # 64, ex. E). Costello maintains that the 1982, 1985 and 1987 guides, each respectively sixty-two, sixty-nine and sixty-two pages in length, differ only cosmetically, such as in the typeface and cover page.

A comparison of exhibit E with the 1982 guide reveals identical wording with minor differences that include: (1) different offices listed on the cover pages; (2) different quality printing, resulting in the black out of words in the 1982 guide; (3) the planning, employment process and job sources sections in the 1982 guide contain handwritten notations; and (4) page fifty-eight is missing from exhibit E. Exhibit E is therefore a later version of the 1982 guide [8]. Winslow worked at Costello after the creation of the 1982 guide and prior to the creation of its revised version, exhibit E.

Mr. Costello states, by affidavit, that Don Sweet, a former employee of Costello, Erdlen & Company, Inc., created an initial version of the guide "the rights of which were to be given to Costello, Erdlen & Company, Inc." (Docket Entry # 64, ex. A; Docket Entry # 74, ex. C). Mr. Costello states that, over time, various employees made "cosmetic changes," such as typeface and grammar, to the "basic manual." (Docket Entry # 64, ex. C).

On the other hand, John D. Erdlen states, by affidavit, that he wrote 98 percent of the original Costello guide "in the early '70s." The guide referred to by Mr. Erdlen began "as a six-page handout" and, by the "late 1970s", had expanded to "50 or 60 pages". (Docket Entry # 74, ex. F).

While working at Costello, Winslow used an unidentified Costello job hunting guide. He further states that, during the course of conducting outplacements, he distributed thousands of these Costello guides. (Docket Entry # 74, ex. D). On February 22, 1985, when Winslow left the company, he took with him a ninety-one page job hunting guide, prepared and given to him by Mr. Sweet, Winslow's supervisor. The guide did not have a copyright notice; nor was Winslow under the impression that any of the guides circulating in the office

---

**4.** Winslow worked at Costello from August 25, 1983 to February 22, 1985.

**5.** WKR's counsel stated at the August 15, 1991 hearing that WKR no longer uses the guide.

**6.** The plaintiff submitted the three guides for review. (*No Docket Entry Number Assigned*).

**7.** Although the defendants had some confusion at the August 15, 1991 hearing, a comparison of the three guides submitted indicates that exhibit E is the 1987 guide. A page by page review of exhibit E and the 1987 guide demonstrates that the two guides differ only with respect to the fact that exhibit E does not contain a page fifty-eight.

**8.** A comparison of Costello's Job Hunting Guide ("exhibit E") to the 1985 guide also reveals identical wording but with a greater number of differences that include: (1) the cover page of exhibit E lists Costello's offices while the 1985 guide does not; (2) the self evaluation section in the 1985 guide is four pages longer than the self evaluation section in exhibit E, in part, because of the different typed face and spacing and the inclusion of *cash flow and net worth work sheets*; (3) inclusion of different resumes in the resume sections, which is three pages longer in the 1985 guide; (4) inclusion of an "ad response" subsection in the 1985 guide; (5) different sample letters; (7) addition of part V in the interviewing section of the 1985 guide; (8) addition of extra paragraphs in the offers and summary sections of the 1985 guide; (9) absence of a copyright notice in the 1985 guide; and (10) a different typeface.

had copyright protection. (Docket Entry # 64, ex. C; Docket Entry # 74, ex. A).

From February 22, 1985 to "mid" 1986, Winslow provided outplacement services as a sole proprietor under the name of W. Winslow & Associates. During this period, Winslow prepared a seventy-seven page document entitled The New Job Hunting Handbook [9]. (Docket Entry # 64, ex. H; Docket Entry # 74, ex. A). When Winslow began working at WKR, he brought a guide with him, according to Charles Richards, a WKR founder who succeeded Winslow as president in 1988. (Docket Entry # 64, ex. D).

In preparing the seventy-seven page guide, Winslow consulted the following sources: The Hidden Job Market; The Hidden Resume; The Complete Job Search Handbook; The Complete Resume Guide; Winning Resumes; Job Resumes; Your Career; Resumes and Beyond and How to Write a Resume to Get the Job You Really Want. (Docket Entry # 74, ex. A). Winslow does not specifically recall using the ninety-one page guide and further maintains that he did not refer to exhibit E. (Docket Entry # 64, ex. C; Docket Entry # 74, ex. A).

The guide used by Costello, entitled Job Hunting Guide ("exhibit E"), contains twelve chapters. The guide used by WKR, entitled Career Search Guide ("exhibit F"), contains fourteen chapters. (Docket Entry # 64). A chapter by chapter comparison of exhibits E and F reveals, in part, the following similarities.

Chapter I, entitled introduction in both guides, is considerably longer in exhibit E.

The first sentence of ¶ 1, page one, of exhibit F is identical to the second sentence of ¶ 1, page one of exhibit E. The phrase "inquisitive mind" appears in both guides.

Chapter II in both guides concerns the concept of job planning. Both guides use charts to visualize the job hunting process. Chapter III uses identical words, "selection" and "placement", when discussing the underlying idea of the employer's recruitment, selection and placement process.

Chapter IV in both guides expresses the idea of evaluating one's strengths and weaknesses. Pages seven and eight in exhibit F paraphrase several paragraphs on the bottom half of page five and the top half of page six [10] of exhibit E. Both chapters contain the words "take a (good) long hard look at yourself."

Chapter VI in exhibit F and chapter V in exhibit E are both entitled "References". Parts 1(a) and (b) in exhibit F paraphrase parts 1(a) through (c) of exhibit E. Both guides contain the words "let them know as soon as possible that you have a potential situation developing." Page sixteen of exhibit F contains ten questions identical to those on page ten of exhibit E.

The resume chapters, chapter VIII in exhibit F and chapter VII in exhibit E, both include a list of "action verbs". A number of the verbs listed are identical. The sample resumes overlap in a number of places. John H. Jones' resume in exhibit F paraphrases Howard G. Dunbar's resume in exhibit E. Edward Callahan's resume in exhibit F paraphrases Peter L. Doherty's resume in exhibit E [11]. Hemingway

---

**9.** With the exception of the cover, exhibit F, used by WKR, is virtually identical to exhibit G, used by Winslow. The cover page of exhibit F lists WKR's office at 275 Wyman Street, a location WKR moved to in November 1988. (Docket Entry # 64, ex. B). Winslow, by affidavit, refers in his deposition to a typewritten version of his original manual as exhibit 21 and to a WKR handbook as exhibit 3, exhibits that Costello did not to include in its motion. (Docket Entry # 64, ex. C). This court assumes that exhibit 22 and exhibit 3 are respectively identical to exhibit G and F of Docket Entry # 64. Costello also refers to an "Exhibit C" in ¶ 7 of its statement of material facts. (Docket Entry # 65). This court assumes Costello intended to refer to exhibit E. Because Costello brings its motion against WKR, as stated in footnote # 2, this court will compare exhibit F, used by WKR, with exhibit E, used by Costello, in determining access and substantial similarity. The parties are invited to advise this court if these are incorrect assumptions within ten days of the date of this Report and Recommendation.

**10.** The paraphrased question is: "Are you direct and honest with people?"

**11.** It should also be noted that David Fenwick's resume in exhibit H, Winslow's original handbook, is virtually identical with Peter J. Potter's resume in exhibit E.

Smith's resume in exhibit F paraphrases and contains identical wording with George H. Peterson's resume in exhibit E.

Chapter IX in exhibit F and chapter VII in exhibit E both involve the concept of locating job sources. Both chapters are organized in a similar manner and contain sections about "network"/ or "personal contacts", contacting third parties through employment agencies and executive search firms, "ad response"/ or "advertisements" and "cold contacts"/ or "prospective employers".

The correspondence chapters, chapter IX in exhibit E and chapter X in exhibit F, both contain sample broadcasting, networking, ad response and employment agency letters. The letters paraphrase each other and contain identical wording.

Chapter X in exhibit E and chapter XI in exhibit F discuss interviewing. The list of difficult questions in exhibit F is identical to the list of difficult questions in exhibit E.

Chapter XI in exhibit E and chapters XII and XIII in exhibit F involve the idea of obtaining and evaluating job offers. Both guides include a position evaluation form or matrix that allows a job candidate to analyze a job offer in a number of categories. Five of the twenty categories in exhibit F are identical to categories in exhibit E.

Costello also seeks protection from the alleged infringement caused by WKR's use of The New Job Hunting Handbook, published by Winslow. (Docket Entry # 64, ex. G). The language in exhibit F is virtually identical to the language in The New Job Hunting Handbook [12]. Consequently, a chapter by chapter comparison of exhibit E and The New Job Hunting Handbook uncovers the similarities described above that do not bear repeating.

By letter dated February 8, 1989, Costello demanded that WKR cease infringing its copyrights. (Docket Entry # 9, ex. B). The letter characterizes The New Job Hunting Handbook as a "derivative work." Costello seeks protection against infringement dating from of April 7, 1988. (Docket Entry # 9, ¶ 13).

## DISCUSSION

Costello moves for partial summary judgment on the grounds of access and substantial similarity [13]. Partial summary judgment eliminates "before trial matters wherein there is no genuine issue of material fact." Fed.R.Civ.P. 56, Advisory Committee Notes, 1946 Amendment.

Rule 56(c) sets forth the standard for entry of partial summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Inferences are drawn in favor of the non-moving party. *Space Master International, Inc. v. City of Worcester,* 940 F.2d 16 (1st Cir.1991); *Herbert W. Price, Etc. v. General Motors Corp.,* 931 F.2d 162 (1st Cir.1991) (record viewed in light most favorable to nonmoving party). In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies,* 882 F.2d 993 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party

---

**12.** Differences between exhibit F and G include: (1) different cover pages; and (2) additional notations on page twenty-five of exhibit F.

**13.** Costello brought its motion under Rule 56(d), Fed.R.Civ.P., a subdivision that allows this court to narrow the issues for trial. Rule 56(a) allows a party to bring a motion for summary judgment upon all or any part of a claim. This court will therefore construe Costello's motion as brought under Rule 56(a) and make appropriate findings under subdivision (d). Partial summary judgment is not a final judgment for purposes of Rule 54, Fed.R.Civ.P.

"bears both the initial and ultimate burden of demonstrating its legal entitlement to summary judgment." *Lopez v. Corporation Azucarera De Puerto Rico*, 938 F.2d 1510 (1st Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Rule 56 does not however permit the nonmoving party to rest upon mere allegations or denials. Rather, it is incumbent upon the nonmoving party to "set forth specific facts demonstrating that there is a genuine issue for trial." *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). The party opposing a motion for partial summary judgment must establish a fact that is both genuine and material. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A factual dispute which is neither genuine nor material will not survive a motion for partial summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

 To prevail on a claim of copyright infringement, Costello must show the following two elements: "(1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer." *Concrete Machinery Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 605 (1st. Cir. 1988). A certificate of registration from the Copyright Office constitutes prima facie evidence of ownership. 17 U.S.C. § 410(c)[14]; *See Russ Berrie & Company, Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980, 987–988 (S.D.N.Y.1980) (knowing failure to advise Office of facts which might occasion rejection is reason to hold registration invalid). Costello seeks partial summary judgment on the latter element, i.e., copying[15].

Copying is rarely shown with direct evidence. Costello may however establish copying by showing: (1) access to the copyrighted work and (2) substantial similarity between the copyrighted work and WKR's work. *Concrete Machinery Co. v. Classic Lawn Ornaments*, 843 F.2d at 606. The trier of fact may still find no copying with countervailing evidence of independent creation as discussed in part C *infra*. Costello has the burden of proof to show both access and substantial similarity. 3 *Nimmer on Copyright* § 12.11(D) (1991).

### A. Access

 Access may be shown by direct evidence of a defendant actually viewing and having knowledge of a protected work. Such evidence is however rare. For this reason, access may be shown inferentially with evidence that a defendant had a reasonable opportunity to view the protected work. *Direct Marketing of Virginia, Inc.*

---

**14.** Proof of ownership requires, among other things, establishing compliance with statutory formalities. 3 *Nimmer on Copyright* § 13.01(A) (1991).

**15.** WKR raises a number of arguments that concern the validity of Costello's copyrights. WKR asserts that during Winslow's employment at Costello, Erdlen and Company, Inc., Costello distributed thousands of job guides to the public without an affixed copyright notice. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985) (issue of validity of copyright in context of injecting work into public domain). The ninety-one page guide Winslow took with him also did not have a copyright notice. WKR therefore asserts that Winslow was unaware of any copyright protection for the Costello guides. *See Shapiro & Son Bedspread Corp. v. Royal Mill's Association*, 764 F.2d 69 (2d Cir.1985) (publication of work without proper notice injects work into public domain and § 405(a)). *See also* 2 *Nimmer on Copyright* § 7.02(C) (statutory formalities) and § 13.08 ("innocent intent does not generally derogate from liability"). WKR further maintains that Costello misrepresented certain facts on the certificate, i.e., the year of creation and the lack of publication. *See Eckes v. Card Prices Update*, 736 F.2d 859, 861 (D.C.Cir.1984) (misstatements were innocent and, absent knowing failure to advise Office of facts that might occasion rejection, registration not invalid on this ground); *Service Training, Inc. v. Data General Corp.*, 737 F.Supp. 334, 342 (D.Md.1990) (certificate is prima facie evidence of facts contained therein). These issues do not defeat Costello's partial summary judgment on the issue of access inasmuch as the above issues go to the validity of Costello's ownership of the copyrights. Costello brings its partial summary judgment motion solely under the second element of a copyright infringement action, copying. WKR places undue emphasis upon the word "protected" in the definition of the second element of a copyright claim.

*v. E. Mishan & Sons, Inc.,* 753 F.Supp. 100, 104 (S.D.N.Y.1990) (may infer access with reasonable opportunity to view); *see generally* 3 *Nimmer on Copyrights* § 13.02(A) (1991) (definition of access).

■ WKR argues that material questions of fact exist as to access. WKR admits that Winslow took a ninety-one page job guide with him when he left Costello's employment in February 1984. WKR asserts, however, that it is unclear what guide(s), of the number of guides that Costello produced, are purportedly infringed and whether Winslow had access to those allegedly infringed guide(s). As stated earlier, however, Costello brings this motion because of the alleged copying of exhibit E, the equivalent of the 1987 guide.

WKR further maintains that he did not have access to a guide created *after* Winslow left Costello, Erdlen & Company, Inc. WKR's argument might have merit were it not for the identical nature of exhibit E and the 1982 guide. In addition to the access Winslow had to the ninety-one page guide he took with him, it can reasonably be assumed that Winslow had access to other Costello guides during his employment. Accordingly, at the very least, as a matter of law, Winslow, and therefore WKR, had a reasonable opportunity to view the precursor to exhibit E, the 1982 guide.

### B. *Substantial Similarity*

■ Substantial similarity is an elusive concept. The term applies to the *expression* of an artist's ideas and not to the ideas themselves. *Concrete Machinery Co. v. Classic Lawn Ornaments,* 843 F.2d at 606. As noted recently by the Supreme Court, "the idea/expression or fact/expression dichotomy applies to all works of authorship." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* —— U.S. ——, 111 S.Ct. 1282, 1290, 113 L.Ed.2d 358 (1991). An author's "arrangement may be protected" but "raw facts may be copied at

will." *Id.* —— U.S. at ——, 111 S.Ct. at 1290. 17 U.S.C. § 102(b) [16].

■ Some ideas however admit to only a limited number of expressions. *Concrete Machinery Co. v. Classic Lawn Ornaments,* 843 F.2d at 606. When there is essentially only one way to express an idea, the expression and the idea become inseparable such that a copyright does not bar copying the expression. *Id.* at 606; *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,* 730 F.Supp. 1165, 1171 (D.Mass.1989). In such a situation, the burden of proof upon a plaintiff is heavy and may require a showing of "near identity" between the competing works. *Concrete Machinery Co. v. Classic Lawn Ornaments,* 843 F.2d at 606. Similarity stemming "solely from the commonality of the subject matter is (therefore) not proof of unlawful copying." *Id.* at 607 (quoting *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 913 (2d Cir.1980)). *See generally* 3 *Nimmer on Copyright* § 13.03(B) (1991) (similarity of expression resulting "from the fact that the common idea that is only capable of expression in a more or less stereotyped form" precludes finding of similarity).

■ The first circuit uses the following two-part test to determine substantial similarity. First, a court determines "whether there has been 'copying'." *Concrete Machinery Co. v. Classic Lawn Ornaments,* 843 F.2d at 606 (citation omitted). "Second, once 'copying' is established, the court . . . determine(s) whether the copying is sufficiently substantial to constitute 'unlawful appropriation'." *Id.* at 608. The first step involves dissecting the work by distilling the unprotected idea from the protected expression, perhaps aided by expert testimony. Under the second step, the court applies the "ordinary observer" test, i.e., "whether or not an ordinary observer would recognize that the alleged copy was appropriated from the protected work."

**16.** Section 102(b) provides that:
In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, re-

gardless of the form in which it is described, explained, illustrated, or embodied in such work.
17 U.S.C. § 102(b).

*Flag Fables,* 730 F.Supp. at 1172 (quoting *Concrete*) [17]; *see generally,* 3 *Nimmer on Copyrights* § 13.03(E)(3). This court will accordingly analyze each step respectively [18].

### (i) Dissection

■ A number of chapters in exhibit E and exhibit F can reasonably be viewed, for purposes of partial summary judgment, to express a common underlying idea in a different manner. Chapters, with the underlying idea in parenthesis, are as follows: chapter II in both guides (the idea of planning); chapter III in both guides (the idea of an employer's recruitment, selection and placement of prospective and new employees); chapter V in exhibit F and chapter VI in exhibit E (keeping adequate records); chapter VIII in exhibit F and chapter VII in exhibit E (preparing resumes [19]); chapter IX in exhibit F and chapter VII in exhibit E (locating job sources [20]); chapter IX in exhibit E and chapter X in exhibit F (correspondence [21]); chapter X in exhibit E and chapter XI in exhibit F (interviewing [22]); and chapter XI in exhibit E and chapters XII and XIII in exhibit F (obtaining and evaluating job offers).

The parties also use charts in chapter II in exhibit E and in exhibit F. In addition, in chapter XI of exhibit E, Costello uses an evaluation form and in chapter XIII of exhibit F, WKR uses an evaluation matrix. The charts and evaluation forms are not substantially similar as a matter of law. Costello does not have a monopoly on the use of charts to express an idea. In addition, the charts used contain a number of different words and differ in structure, one being in the shape of an ellipse and the other being in the shape of rectangles. *See: Januz Marketing Com. v. Doubleday & Co., Inc.,* 569 F.Supp. 76, 79–81 (S.D.N.Y.1982) (charts providing suggetive format were not protected); *Matthew Bender & Co. v. Kluwer Law Book Publishers,* 672 F.Supp. 107 (S.D.N.Y.1987) (limited number of ways to express information; and forms did not convey information).

It should also be noted that the similarities between the parties' job guides stems, in part, from the commonality of the idea of how to get a job. The idea, getting a job, logically begins with the loss of a job and ends with procuring new employment. The natural progression is as follows: developing an overall plan on how to get a job, analyzing goals, work experience and the job market, obtaining references and formulating resumes and cover letters, networking, interviewing and, finally, receiving and accepting a job offer. This is not to say that there may be other ways to express the idea of how to get a job; but it

**17.** In support of the "ordinary observer" test, the *Concrete* court cited *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). The *Hoehling* court noted that "(b)ecause substantial similarity is customarily an extremely close question of fact (citation omitted), summary judgment has traditionally been frowned upon in copyright litigation." *Hoehling v. Universal City Studios, Inc.,* 618 F.2d at 977. The *Concrete* court further recognized that a court, by dissecting the accused work, "may be able to determine as a matter of law whether" an accused work had copied protected aspects of a copyrighted work. Lastly, it should be noted that dissection may be improperly used if the work, as a whole, such as with a compilation, is capable of protection. *Concrete Machinery Co. v. Classic Lawn Ornaments,* 843 F.2d at 608 & n. 8; *See* 17 U.S.C. § 101 (definition of compilation).

**18.** This court will limit its application of the two-part test to exhibit E and to exhibit F, the Career Search Guide, published by WKR, inasmuch as Costello's motion is brought against WKR. In the alternative, even assuming WKR's use of The New Job Hunting Guide, this court finds a material issue of fact exists as to the substantial similarity between this guide and exhibit E because of the evidence of independent creation.

**19.** These chapters contain similarities of expression in a number of the sample resumes as noted *infra.*

**20.** Although the chapters contain virtually the same skeletal organization, the chapters can reasonably be viewed as expressing the idea of locating additional job sources in a different manner.

**21.** These chapters include similar expressions of sample correspondence letters as stated *infra.*

**22.** These chapters include identical expressions of sample interview questions as noted *infra.*

is nonetheless logical to start with a plan and finish with an offer. The similarity in the table of contents in the guides at issue reflects, in part, the limited number of ways to express the idea of how to get a job.

The similarities in expression between exhibit E and exhibit F are, nevertheless, pronounced in a number of places. The similarities are particularly striking in the resume and correspondence chapters. The broadcast, networking and ad response letters in exhibits F are essentially verbatim copies of the corresponding letters in exhibit E. John H. Jones's, Edward Callahan's and Hemingway Smith's resumes in exhibit F are, with the exception of names and addresses and other minor variations, exact duplicates of Howard G. Dunbar's, Peter L. Doherty's and Hemingway Smith's resumes in exhibit E. David Fenwick's resume in exhibit H, Winslow's original handbook, is identical to the resume of Peter J. Potter in exhibit E. In fact, the original page number of exhibit E and Peter Potter's name are crossed out, but still visible, in exhibit H. Moreover, although the text of the interview chapters in exhibit F and E may vary, it is virtually impossible to believe that WKR, through Winslow, independently created fifty-nine difficult questions that are *identical* to fifty-nine difficult questions in exhibit E. Although there are differences, there also appear to be distinct portions that are virtually verbatim. This court doubts that a jury will ignore these similarities.

In addition, WKR cannot avoid liability by simply paraphrasing expressions. *Salinger v. Random House, Inc.*, 811 F.2d 90, 97 (2d Cir.1987), *reh'g denied*, 818 F.2d 252 (2d Cir.), *cert. denied*, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987) (paraphrasing equivalent to quoting verbatim); *see generally*, 3 *Nimmer on Copyright* § 13.-03(A), fn. 13 (1991). The paraphrasing previously noted in chapters IV, VI, VIII and X in exhibit F is highly suspect. This court is also troubled by the identical sentences and paraphrasing previously noted in chapters I, IV and VI in exhibit F.

The above similarities in expression are indeed marked. It is a close question as to whether the similarities are substantial as a matter of law. After careful and serious consideration however, this court declines to issue partial summary judgment on substantial similarity and, accordingly, turns to the ordinary observer test.

(ii) Ordinary Observer

■ Under this second step, for purposes of partial summary judgment, the issue is whether, as a matter of law, the ordinary observer would find substantial similarity between the two works. *See O'Neill v. Dell Publishing Co., Inc.*, 630 F.2d 685, 687 (1st Cir.1980) (framing issue for summary judgment purposes; summary judgment for alleged infringer upheld). Viewing the above similarities in expression, this court cannot find, as a matter of law, that the ordinary observer would recognize that exhibit F was appropriated from exhibit E. In the alternative, this court also finds that a material question of fact exists as to whether Winslow independently created the New Job Hunting Handbook ("exhibit G") as described below.

C. *Independent Creation*

■ Proof of access and substantial similarity does not require the trier of fact to find copying if a defendant introduces evidence of independent creation. *Direct Marketing of Virginia, Inc. v. E. Mishan & Sons, Inc.*, 753 F.Supp. 100, 104 (S.D.N.Y.1990) (trier of fact can find no copying if it believes evidence of independent creation). Even with such evidence, however, there may be such substantial similarity that "no explanation other than copying is reasonably possible." *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, n. 2 (2d Cir.1977); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir.1971) (evidence of independent creation included defendant's standing as a creator of works in the relevant field and defendant's identification of sources other than plaintiff's work); 3 *Nimmer on Copyrights* § 13.01(B) at n. 36 (1991).

In this instance, Winslow identified nine independent sources that he consulted in preparing exhibit G from February 1985 to 1986. (Docket Entry # 74, ex. A). This evidence allows a trier of fact to reasonably conclude that Winslow independently created exhibit G [23]. Although the guides contain similarities, the similarities are not so substantial such that no explanation other than copying is reasonably possible.

This court therefore finds, as a matter of law, that WKR had access to the guide attached as exhibit E, Costello's Job Hunting Guide; and that exhibit F, WKR's Career Search Guide, is not substantially similar to exhibit E, as a matter of law. It is therefore RECOMMENDED [24] that Plaintiff's Motion for Partial Summary Judgment (Docket Entry # 64) be ALLOWED as to access and DENIED as to substantial similarity.

## II. PLAINTIFF COSTELLO, ERDLEN & COMPANY, INC.'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR HEARING (DOCKET ENTRY # 81)

Costello moves for injunctive relief against WKR because WKR allegedly created Bishop & Company, Inc. ("Bishop") "solely for the purposes of funneling WKR's assets (into this) newly created corporation". (Docket Entry # 81). In particular, Costello seeks to enjoin WKR from:

soliciting, marketing, or selling outplacement services under the name of any outplacement firm other than Winslow, King, Richards & Company or 'WKR,' and from diverting or siphoning off to, or commingling with, any other corporate entity any of its receivables, corporate opportunities, confidential or proprietary business information, trade secrets, or

goodwill relating to the provision of outplacement services.

(Docket Entry # 81).

Costello simultaneously filed a motion to amend the complaint in order to add Bishop as a party. (Docket Entry # 83). At the August 15, 1991 hearing, WKR stated that it did not oppose adding Bishop as a party. This motion is, however, pending before the district judge; therefore, this court expresses no opinion on the propriety of amendment.

The purpose of a preliminary injunction is generally "to preserve the *status quo.*" *Itek Corp. v. First National Bank of Boston,* 566 F.Supp. 1210, 1215 (D.Mass.1983), *affirmed,* 730 F.2d 19 (1st Cir.1984). In seeking a preliminary injunction, Costello must show: (1) that it will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on WKR; (3) that Costello has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the issuance of the injunction. *Correction Officers Local 419, A.F.S.C.M.E., AFL–CIO v. William Weld and Robert Rufo,* 768 F.Supp. 397 (D.Mass.1991) (quoting *Camel Hair & Cashmere Inst. of America, Inc. v. Assoc. Dry Goods Corp.,* 799 F.2d 6 (1st Cir. 1986)).

Irreparable harm exists when remedies at law are inadequate. *Republic of Panama v. Republic National Bank of New York,* 681 F.Supp. 1066, 1069 (S.D.N.Y. 1988); *see Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 52 (1st Cir.1986) (irreparable harm if defendant likely to be insolvent before final judgment); *Cabot Corp. v. Ashland Oil, Inc.,* 597 F.Supp. 436, 438 (D.Mass.1984) (court determines if legal remedies inadequate).

---

**23.** As noted in footnote # 2, exhibit F, published by WKR, and exhibit G, published by Winslow, are virtually identical.

**24.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).

Although WKR arguably changed the *status quo* by incorporating Bishop, WKR explains its actions by the need to abide by a settlement agreement entered into with Winslow in October 1990. Winslow no longer works at WKR. As part of the settlement, WKR therefore agreed to cease using the name Winslow in carrying on its business. (Docket Entry #84, ex. A). Herbert E. Levine, WKR's treasurer and assistant clerk, states, by affidavit, that he "knows of no instance where any of WKR's assets have been transferred to Bishop." He further swears that Bishop exists "in name only." Receivables of Bishop are "deposited to WKR accounts (and) sales are posted to WKR sales." (Docket Entry #84, ex. B). For these reasons alone, this court finds that Costello fails to show "irreparable injury", a necessary element for allowing an injunction. *See K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir.1989) (no irreparable injury if money damages fully alleviates harm). In addition, this court finds injunctive relief premature. The motion to add Bishop as a party, if allowed, would also provide an adequate remedy at law for any real or perceived harm created by the incorporation of Bishop.

Accordingly, it is RECOMMENDED [25] that Costello's motion for a preliminary injunction (Docket Entry #81) be DENIED.

### CONCLUSION

For reasons stated above, this court RECOMMENDS [26] that: (1) Plaintiff's Motion for Partial Summary Judgment (Docket Entry #64) be ALLOWED as to access and DENIED as to substantial similarity and (2) Plaintiff Costello, Erdlen & Company, Inc.'s Motion for Preliminary Injunction and Request for Hearing (Docket Entry #81) be DENIED.

---

**25.** See footnote #20.

**26.** See footnote #20.